K. Kasey Corbit    SBN 237931
SEREN LEGAL
21 Seacape Drive
Muir Beach, CA 94965
Telephone:  (415) 349-7491
E: kasey@seren.legal
Attorney for Plaintiff DIMITRI MAYE

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

## COMPLAINT FOR A CIVIL CASE

| | |
|---|---|
| DIMITRI MAYE,<br><br>     Plaintiff,<br><br>v.<br><br>ONLINE LAND SALES LLC, BRIAN QUILTY, SCOTT WIGGINGTON, CLASSIC COUNTRY LAND LLC, DOES 1-25,<br><br>     Defendants. | CASE NO.:<br><br>COMPLAINT FOR DAMAGES PURSUANT TO RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), INTENTIONAL MISREPRESENTATION, CONVERSION, VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200<br><br>JURY TRIAL DEMANDED |

Plaintiff brings this diversity jurisdiction and federal question action pursuant to 28 U.S.C. § 1331 and 28 U.S.C § 1367 for damages, restitution, and injunctive relief under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(3), and the laws the State of California. Plaintiff alleges the following facts based on Plaintiff's knowledge and on information and belief as to all other allegations:

///

- 1 -

SEREN LEGAL

SEREN LEGAL

1. This complaint is properly brought in the United States District Court for the Eastern District of California pursuant to 28 U.S.C. § 1332. Plaintiff's damages exceed $75,000 and there is a diversity of jurisdiction amongst the parties.

2. The land that is the subject of this action is located in Lassen County, California.

3. Plaintiff, is, and at all times mentioned in this complaint was, a resident of Alameda County, California.

4. Defendant ONLINE LAND SALES LLC is a limited liability company organized under the laws of Nevada with its principal place of business in Douglas County, Nevada.

5. Defendant BRIAN QUILTY is and at all times herein was a resident of Washoe County, Nevada. Defendant QUILTY is the Managing Member of Online Land Sales LLC.

6. Defendant SCOTT WIGGINTON is, and at all times mentioned in this complaint, was a resident of Collin County, Texas.

7. Defendant CLASSIC COUNTRY LAND, LLC, is a limited liability company organized under the laws of Nevada with its principal place of business in Texas.

8. Defendant SCOTT WIGGINTON is, and at all times mentioned in this complaint, Managing Member of CLASSIC COUNTRY LAND, LLC.

9. Plaintiff does not know the true names of Defendants DOES 1 through 25, inclusive, and therefore sues them by those fictitious names.

10. Plaintiff is informed and believes, and on that basis alleges, that at all relevant times, Defendants were acting as the agents, servants, employees, partners, alter-ego, and/or joint venturers of each other. Defendants maintain such unity of interest that separate personalities of each defendant no longer exists. In doing the wrongful acts alleged herein, each defendant was acting in the full course and scope of such agency, employment,

- 2 -

COMPLAINT FOR DAMAGES PURSUANT TO RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), INTENTIONAL MISREPRESENTATION, CONVERSION, VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200

SEREN LEGAL

partnership, and/or joint venture with the full knowledge, consent, permission, and ratification, either express or implied, of each of the other defendants; and as such, was acting as the alter ego of each other defendant.

11. Plaintiff seeks a jury trial on all claims.

12. Plaintiff is the owner of land located at Lot 34 Ravendale Ranch – 160 acres +/-, SE4, Section 1, T34N, R14E, MDM, Lassen County, California ("Subject Property").

13. Plaintiff purchased this land from Defendant ONLINE LAND SALES through a contract-for-deed scheme both Defendants ONLINE LAND SALES and CLASSIC COUNTRY LAND engage in routinely around the country.

14. The Subject Property is a vacant, undeveloped lot that Plaintiff purchased to start a farm.

15. Plaintiff entered into the contract with Defendant ONLINE LAND SALES on February 28, 2018. Plaintiff agreed to purchase the property for $55,000. A true and correct copy of the contract between the parties is attached hereto as **Exhibit 1.**

16. Throughout the contract, Defendant ONLINE LAND SALES referred to itself as "Seller." In said contract, Defendant ONLINE LAND SALES agreed to Seller "convey, sell, assign, transfer and set over unto Purchaser, the . . .  property situated in Lassen County, State of CA," including "all rights of ownership associated with the property . . . ." Under California law, Defendant ONLINE LAND SALES could only contract to sell such rights of ownership if Defendant ONLINE LAND SALES possessed those rights itself.

17. In March 2018, Defendant ONLINE LAND SALES charged Plaintiff $400.36 for property taxes, which Plaintiff paid.

///

///

- 3 -

COMPLAINT FOR DAMAGES PURSUANT TO RACKETEER INFLUENCED AND
CORRUPT ORGANIZATIONS ACT ("RICO"), INTENTIONAL MISREPRESENTATION,
CONVERSION, VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200

SEREN LEGAL

18. The advertisement for the Subject Property advised that once Plaintiff entered into the contract for the deed, Plaintiff would be given full rights to access the property and begin any business or construction thereon.

19. The contract provides for immediate access as well. Specifically, it says, "Purchaser shall take possession of the property and all improvements thereon upon execution of this contract and shall continue in the peaceful enjoyment of the property so long as all payments due under the terms of this contract are timely made."

20. Based on this language, Plaintiff should have been able to access the property on or about February 28, 2018.

21. Plaintiff attempted to access the Subject Property on or before June 2018. The property is only accessible by a sixty-foot (60), four-wheel-drive dirt trail off Chicken Ranch Road (hereinafter "easement"). Several parcels owned by other individuals abut the easement, with Plaintiff's property being the last property. There is no other means by which Plaintiff can access this property.

22. When Plaintiff arrived, a locked gate was across the easement barring access.

23. Plaintiff is informed and believes, and based thereon alleges, that third-party Jeff Askew, the owner of the lot on the northwestern most part of the easement and abutting Chicken Ranch Road, maintains control over the gate.

24. Plaintiff requested access to the easement to reach the Subject Property but was denied access to the property because his name was not on the deed.

25. Plaintiff inquired at the County Recorder's Office about easement access and discovered that on or about June 24, 2010 Johnetta Ford, an unrelated third party, had recorded a contract-for-deed contract with Defendant WIGGINTON for which she had not filed a

- 4 -

transfer or quitclaim deed. Plaintiff, however, had a similar contract-for-deed but it was with Defendant ONLINE LAND SALES instead of Defendant WIGGINTON.

26. Following this discovery, which Plaintiff mentioned to Defendant ONLINE LAND SALES, Ms. Ford recorded a quitclaim deed on or about June 25, 2018.

27. Plaintiff is informed and believes, and based thereon alleges, that Ms. Ford also paid the property taxes for which Plaintiff had been charged in March 2018.

28. On or about June 12, 2018, Defendant ONLINE LAND SALES. provided Plaintiff with a copy of a contract-for-deed agreement it had with Defendant CLASSIC COUNTRY LAND LLC for the Subject Property. Again, this contract was not with Defendant WIGGINTON. Defendant ONLINE LAND SALES'S contract purported to be signed on May 1, 2015. A true and correct copy of the contract Defendant ONLINE LAND SALES. provided to Plaintiff is attached hereto as **Exhibit 2.** Under California law, it was impossible for both Johnetta Ford and Defendant ONLINE LAND SALES to own the land simultaneously.

29. Plaintiff is informed and believes, and based thereon alleges, that the recorded contract-for-deed between Defendant CLASSIC COUNTRY LAND LLC and Johnetta Ford was the second such contract that Ms. Ford had entered into with Defendant WIGGINTON/Defendant CLASSIC COUNTRY LAND LLC to purchase the Subject Property. Plaintiff is informed and believes, and based thereon alleges, that both times Ms. Ford defaulted on her mortgage for the Subject Property. The recorded information indicates that Ms. Ford agreed to a purchase price of $62,101 for the Subject Property the second time she entered a contract-for-deed arrangement with Defendant WIGGINTON/Defendant CLASSIC COUNTRY LAND LLC. The recorded information indicates that Ms. Ford only put down $1,301. Plaintiff is informed and believes, and based thereon alleges, that Ms.

- 5 -

Ford paid tens of thousands of dollars, the vast majority of which went to interest, to secure the Subject Property and lost the property both times.

30. Plaintiff is informed and believes, and based thereon alleges, that Johnetta Ford believed she had an ownership interest in the Subject Property until sometime shortly before or after Plaintiff signed a contract for the Subject Property.

31. Prior to Ms. Ford's signing of the quitclaim deed, Plaintiff located a telephone number for Defendant SCOTT WIGGINTON and called him to ask if there was easement access to the Subject Property. Defendant WIGGINGTON assured Plaintiff that there was easement access.

32. Plaintiff also sent email correspondence regarding these same issues to Defendant BRIAN QUILTY. Plaintiff is informed and believes, and based thereon alleges, that Defendant QUILTY responded using a general email account for Defendant ONLINE LAND SALES LLC. Plaintiff only received emails from this account following communications he sent directly to Defendant QUILTY.

33. On or around July 11, 2018, Defendant CLASSIC COUNTRY LAND LLC, through its employee Lori Murphy, advised both Plaintiff and Defendant ONLINE LAND SALES that the 60 ft. road that leads from Chicken Ranch Road to Plaintiff's parcel was not a recorded easement and was, in fact, "a public road."

34. Subsequently, on or around July 16, 2018, through its employee Eileen Sunga, Defendant ONLINE LAND SALES told Plaintiff that the Subject Property could be "accessed via a small 4WD dirt trail off of Chicken Ranch Road. There is also a 60 ft. legal recorded easement in place for guaranteed access from the county plat maps. Below is representation of the 60 ft' [sic] easement to your property." Through its employee Eileen Sunga,

- 6 -

COMPLAINT FOR DAMAGES PURSUANT TO RACKETEER INFLUENCED AND
CORRUPT ORGANIZATIONS ACT ("RICO"), INTENTIONAL MISREPRESENTATION,
CONVERSION, VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200

Defendant ONLINE LAND SALES LLC provided Plaintiff with a copy of the county plat map highlighting the purported easement.

35. On the county plat map, there is an easement that traverses the parcels between Chicken Ranch Road and the Subject Property, terminating at the western end of the Subject Property.

36. The contract between Plaintiff and Defendant ONLINE LAND SALES LLC states that the land conveyed comes "with all rights of ownership associated with the property, including, but not limited to, all easements and rights benefiting the premises, whether or not such easements and rights are of record . . . ." Thus, Plaintiff reasonably could rely on Defendants' statements that an easement right existed, whether recorded or not.

37. Because Plaintiff had been promised access to the land immediately upon signing the contract with Defendant ONLINE LAND SALES LLC and Plaintiff had been assured that an easement existed to access the property, Plaintiff began developing prospects for commercial farming. One such prospect was entering into discussions with the United States Department of Agriculture ("USDA"). USDA, however, would not contract with Plaintiff until he had guaranteed access to the property.

38. In or about March 2019, Plaintiff contacted Eileen Sunga, employee of Defendant ONLINE LAND SALES, and Lori Murphy, employee of Defendant CLASSIC COUNTRY LAND, to try to obtain a lease agreement signed by Defendant SCOTT WIGGINTON. Defendant WIGGINTON's name was on title as the owner of the property; however, Plaintiff's contract was with Defendant ONLINE LAND SALES. Because Defendant ONLINE LAND SALES was not on title, the contract-for-deed signed by Plaintiff provided him no legitimate access or rights to the property. The lease agreement signed by Defendant

- 7 -

COMPLAINT FOR DAMAGES PURSUANT TO RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), INTENTIONAL MISREPRESENTATION, CONVERSION, VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200

SEREN LEGAL

WIGGINTON was necessary to begin farming pursuant to a contract with USDA. Defendants refused to sign.

39. On or about August 6, 2020, Plaintiff again asked Defendant ONLINE LAND SALES to sign, or to have Defendant WIGGINTON sign, a land lease contract that would allow Plaintiff to contract with the USDA. The following day, Defendant CLASSIC COUNTRY LAND asked Defendant ONLINE LAND SALES to inquire whether Plaintiff intended to operate an illegal marijuana farm because they had "several issues" with that "a few years ago."

40. Despite Plaintiff's assurances that he wanted to grow food and materials crops, Defendants would not deliver to him the signed lease agreement he needed to begin operations.

41. Defendant WIGGINTON refused to sign any lease agreement. Defendant CLASSIC COUNTRY LAND's employee, Lori Murphy, stated that if Plaintiff paid off the property, Defendant WIGGINTON would then ensure that Plaintiff had access to the property.

42. Plaintiff had signed a contract with Defendant ONLINE LAND SALES that allowed for fifteen years in which to pay off the property and which promised immediate access. Plaintiff had planned to access the property right away to begin his commercial farming operation so that he could pay off the land. He did not purchase the land with the intent of waiting fifteen years to access it and Defendant ONLINE LAND SALES knew that.

43. Defendant WIGGINTON and his employees, working under the auspices of Defendant CLASSIC COUNTRY LAND LLC, then refused to communicate with Plaintiff on the ground that Plaintiff's contract was with Defendant ONLINE LAND SALES. Plaintiff, therefore, would send his inquiries about land access to Defendant ONLINE LAND SALES, who would then forward the inquiries to Defendant CLASSIC COUNTRY LAND

- 8 -

COMPLAINT FOR DAMAGES PURSUANT TO RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), INTENTIONAL MISREPRESENTATION, CONVERSION, VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200

SEREN LEGAL

LLC. Defendant CLASSIC COUNTRY LAND LLC would reply to Defendant ONLINE LAND SALES, who would then reply to Plaintiff. This occurred multiple times during the course of the parties' interactions.

44. At the time of Plaintiff's inquiries about land access, Defendant SCOTT WIGGINTON was the owner of record for the Subject Property. Defendant ONLINE LAND SALES represented to Defendant that it had an ownership interest in the Subject Property on the basis of its contract-for-deed agreement with Defendant CLASSIC COUNTRY LAND LLC. However, neither Defendant ONLINE LAND SALES nor Defendant CLASSIC COUNTRY LAND LLC had an ownership interest in the Subject Property. Neither told Plaintiff this.

45. Additionally, neither Defendant ONLINE LAND SALES nor Defendant CLASSIC COUNTRY LAND LLC ever told Plaintiff that there was no easement access to the Subject Property. Rather, both acted in concert to make Plaintiff believe that if he paid off the land, he would gain access to the land via the easement that appeared on the county plat map.

46. Plaintiff paid off the land in or about May 2021 in an effort to gain the access he had been promised. The contract provides both that a deed is to be provided to purchaser "upon total payment of the purchase price" and that time is of the essence "in the performance for each and every term" in the contract.

47. Not until July 17, 2021 did Defendant BRIAN QUILTY sign a warranty deed transferring title of the property to Plaintiff. However, Defendant WIGGINTON did not sign a deed transferring a deed to Defendant ONLINE LAND SALES until August 2, 2021. The deed transferring the Subject Property from Defendant WIGGINTON to Defendant ONLINE

COMPLAINT FOR DAMAGES PURSUANT TO RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), INTENTIONAL MISREPRESENTATION, CONVERSION, VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200

LAND SALES was recorded on August 9, 2021 and the deed transferring the Subject

Property from ONLINE LAND SALES to Plaintiff was recorded on August 16, 2021.

48. Between May and August, Plaintiff repeatedly contacted Defendant ONLINE LAND

SALES to inquire about the status of the deed. No one would answer Plaintiff.

49. When Plaintiff finally received his deed and again attempted to access the property, he was

denied access because there is no right for the owner of the Subject Property to access the

easement that appears on the plat map, the same easement Defendants SCOTT

WIGGINTON and ONLINE LAND SALES clearly told Plaintiff he had a right to access.

50. Plaintiff again repeatedly tried to contact Defendant ONLINE LAND SALES but he

received no clear answer to his inquiries about the existence of the easement.

51. Defendant ONLINE LAND SALES offered to refund twenty percent of the purchase price

or to trade Plaintiff for a different forty-acre parcel in another part of Lassen County.

Plaintiff's parcel is four times the size of the parcel offered for exchange and is ideally

suited for the farming enterprise for which Plaintiff purchased the property. If Plaintiff had

accepted the partial refund, he would have lost eighty percent of his investment.

52. Plaintiff has tried to obtain an easement through other routes; however, no clear road exists

to get Plaintiff onto the Subject Property aside from the easement road that appears on the

plat map.

53. Defendants will not cooperate with Plaintiff by providing him any information whatsoever

regarding the basis for their statements that an easement existed. To the extent a prescriptive

easement existed, Plaintiff fears those rights will be terminated shortly due to the passage of

time.

///

- 10 -

COMPLAINT FOR DAMAGES PURSUANT TO RACKETEER INFLUENCED AND
CORRUPT ORGANIZATIONS ACT ("RICO"), INTENTIONAL MISREPRESENTATION,
CONVERSION, VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200

SEREN LEGAL

54. Defendants, and each of them, acted in concert to string Plaintiff along believing that if he paid off the Subject Property and a deed was recorded in his name that he would be able to access his property. Defendants also, and each of them, also worked together to use changing requirements to keep Plaintiff from discovering the truth that the Subject Property is landlocked.

55. Plaintiff is informed and believes, and based thereon alleges, that Defendants work in concert to sell inaccessible land through contract-for-deed schemes across the country. Defendants allow such little principal to be paid at any given time that most purchasers default before discovering the deficiencies with their land access or to find out that the land otherwise was not as advertised. However, Defendants have been sued in other jurisdictions for the same or similar deceptive practices as described herein.

### FIRST CAUSE OF ACTION
**Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, et seq.**
(Against All Defendants)

56. Plaintiff alleges each and every paragraph above and below incorporating each by reference as though set forth in full in this cause of action.

57. Defendant SCOTT WIGGINTON is an individual and the managing member of Defendant CLASSIC COUNTRY LAND LLC and constitutes an enterprise under 18 U.S.C. § 1961.

58. Defendant BRIAN QUILTY is an individual and the managing member of Defendant ONLINE LAND SALES LLC and constitutes an enterprise under 18 U.S.C. § 1961.

59. Defendant CLASSIC COUNTRY LAND LLC is a limited liability company organized under the laws of Nevada and constitutes an enterprise under 18 U.S.C. § 1961.

60. Defendant ONLINE LAND SALES LLC is a limited liability company organized under the laws of Nevada and constitutes an enterprise under 18 U.S.C. § 1961.

- 11 -

COMPLAINT FOR DAMAGES PURSUANT TO RACKETEER INFLUENCED AND
CORRUPT ORGANIZATIONS ACT ("RICO"), INTENTIONAL MISREPRESENTATION,
CONVERSION, VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200

SEREN LEGAL

61. Defendants, and each of them, also formed an association-in-fact enterprise as the term is used in 18 U.S.C. § 1961.

62. By advertising land in California from their respective locations in Texas and Nevada engaged in interstate commerce and/or activities which affect interstate commerce.

63. By financing the Subject Property, Defendant ONLINE LAND SALES LLC engaged in interstate commerce and/or activities which affect interstate commerce.

64. By making fraudulent representations regarding access to the Subject Property to entice Plaintiff to continue paying for the Subject Property and to accelerate his payments to pay off the Subject Property, interstate commerce and/or activities which affect interstate commerce.

65. Defendants, and each of them, participated in mail and wire fraud, as described below and incorporated herein.

66. This racketeering activity, specifically the mail and wire fraud, is separate and distinct from Defendants' usual business, which is the sale and financing of undeveloped land throughout the United States.

67. Plaintiff is entitled to treble damages based on this conduct.

**PREDICATE ACT FOR FIRST CAUSE OF ACTION**
**Mail Fraud, 18 U.S.C. § 1341**
(Against All Defendants)

68. Plaintiff alleges each and every paragraph above and below incorporating each by reference as though set forth in full in this cause of action.

69. Defendants, and each of them, signed various deeds to complete the fraudulent scheme outlined above and used the United States Postal Service or interstate carriers to cause these deeds to be recorded.

- 12 -

COMPLAINT FOR DAMAGES PURSUANT TO RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), INTENTIONAL MISREPRESENTATION, CONVERSION, VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200

SEREN LEGAL

70. On August 2, 2021, Defendant SCOTT WIGGINTON signed a deed transferring all rights of ownership in the Subject Property to Defendant ONLINE LAND SALES LLC. Defendant WIGGINTON used Defendant CLASSIC COUNTRY LAND LLC's employee Lori Murphy to notarize the deed. Defendant WIGGINTON, or an agent working at Defendant WIGGINTON's direction, used the United States Postal Service or an interstate carrier to cause this deed to be sent from Collin County, Texas to be recorded in Lassen County, California. Defendant WIGGINTON directed the Susanville County Recorder's Office to mail a copy of the recorded deed to Defendant ONLINE LAND SALES LLC.

71. Subsequent to the recording of the deed transferring ownership of the Subject Property from Defendant WIGGINTON to Defendant ONLINE LAND SALES LLC, Defendant ONLINE LAND SALES LLC executed a deed transferring all rights and ownership in the Subject Property to Plaintiff. Defendant BRIAN QUILTY signed the deed. Defendant ONLINE LAND SALES used the United States Postal Service or an interstate carrier to cause this deed to be sent from Washoe County, Nevada to be recorded in Lassen County, California. Defendant WIGGINTON directed the Susanville County Recorder's Office to mail a copy of the recorded deed to Plaintiff.

72. These recorded deeds culminated the scheme whereby Defendants, and each of them, misrepresented the character, nature, and quality of the Subject Property to defraud Plaintiff and divest themselves of landlocked property.

**PREDICATE ACT FOR FIRST CAUSE OF ACTION**
**Wire Fraud, 18 U.S.C. § 1343**
(Against All Defendants)

73. Plaintiff alleges each and every paragraph above and below incorporating each by reference as though set forth in full in this cause of action.

SEREN LEGAL

74. Defendants, and each of them, repeatedly made fraudulent statements to Plaintiff regarding access to the Subject Property using the telephone and internet as outlined above.

75. Specifically, on or before February 26, 2018, using the internet and internet-based communications, Defendant ONLINE LAND SALES LLC represented that it owned the Subject Property and had the ability to transfer all ownership rights to Plaintiff if Plaintiff purchased the Subject Property from them.

76. On or before February 26, 2018, using the internet and internet-based communications, Defendant ONLINE LAND SALES LLC represented that if Plaintiff entered into a contract-for-deed for the Subject Property, Plaintiff would have immediate access to the Subject Property.

77. On or before February 26, 2018, using the internet and internet-based communications, Defendant ONLINE LAND SALES LLC provided a contract-for-deed to Plaintiff, which Plaintiff electronically signed. On or before February 28, 2018, using the internet and internet-based communications, Defendant ONLINE LAND SALES LLC executed the contract using a digital signature and subsequently provided a copy to Plaintiff.

78. On or about June 12, 2018, through its employee Eileen Sunga and using the internet and internet-based communications, Defendant ONLINE LAND SALES told Plaintiff that it had a contract-for-deed with Defendant CLASSIC COUNTRY LAND LLC for purchase of the Subject Property and sent a copy of the purported contract to Plaintiff. This contract contains a purported signature date of May 1, 2015, more than three years before Ms. Ford filed her quitclaim deed. Plaintiff is informed and believes, and based thereon alleges, that Ms. Ford made at least one payment on the Subject Property between May 1, 2015 and some time in 2018 prior to her signing the quitclaim deed.

- 14 -

COMPLAINT FOR DAMAGES PURSUANT TO RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), INTENTIONAL MISREPRESENTATION, CONVERSION, VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200

SEREN LEGAL

79. On or before June 20, 2018, Plaintiff telephoned Defendant SCOTT WIGGINTON to inquire about easement access to the Subject Property. During that telephone call, Defendant WIGGINTON advised Plaintiff that there was in fact easement access to the Subject Property and that he would see that Plaintiff would be able to use said easement.

80. On or before June 20, 2018, Defendant ONLINE LAND SALES LLC through its employee Eileen Sunga and using the internet and internet-based communications, Defendant ONLINE LAND SALES LLC told Plaintiff that Defendant CLASSIC COUNTRY LAND LLC reported that Johnetta Ford was going to sign a quitclaim deed and then inform Defendants she had completed the recording of said quitclaim. In this same communication, Defendant ONLINE LAND SALES LLC also told Plaintiff that Lassen County indicated it would identify who had placed the lock on the easement access road and would remove it themselves if necessary. Plaintiff is informed and believes, and based thereon alleges, that this information was not true.

81. In June 2018, in response to Plaintiff's requests for information about access to the Subject Property, Defendant ONLINE LAND SALES used email to tell Plaintiff it had tried calling him and could not reach him. Plaintiff received no such calls and his phone records revealed he had not missed calls from Defendant ONLINE LAND SALES. Plaintiff advised Defendant ONLINE LAND SALES of these facts.

82. On or around July 9, 2018, Defendant ONLINE LAND SALES LLC, through its employee Eileen Sunga and using the internet and internet-based communications, told Plaintiff that a quitclaim deed had been recorded by Johnetta Ford and that Plaintiff should have no issues accessing the Subject Property.

///

- 15 -

COMPLAINT FOR DAMAGES PURSUANT TO RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), INTENTIONAL MISREPRESENTATION, CONVERSION, VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200

SEREN LEGAL

83. On or around July 11, 2018, Defendant CLASSIC COUNTRY LAND LLC, through its employee Lori Murphy, advised both Plaintiff and Defendant ONLINE LAND SALES that the 60 ft. road that leads from Chicken Ranch Road to Plaintiff's parcel was not a recorded easement and was, in fact, "a public road." Ms. Murphy used the internet and internet-based communications to convey this information.

84. On or around July 11, 2018, Eileen Sunga, an employee of Defendant ONLINE LAND SALES, using the internet and internet-based communications, told Plaintiff that she had called the Lassen County Recorder's Office and they advised her that "only Classic county [sic] will have the option to update records on their files." Since Defendant CLASSIC COUNTRY LAND SALES LLC had no ownership interest in the Subject Property, as it was owned by Defendant SCOTT WIGGINTON in his individual capacity, it seems unlikely that the Lassen County Recorder's Office would have made such a statement.

85. On or around July 13, Plaintiff went to the Lassen County Recorder's Office to determine what he needed to access the Subject Property. Plaintiff was advised that Defendant ONLINE LAND SALES LLC had no authority to give Plaintiff access to the Subject Property. Plaintiff contacted Defendant ONLINE LAND SALES LLC while still at the Recorder's Office to advise them of such.

86. On or around July 16, 2018, through its employee Eileen Sunga and using the internet and internet-based communications, Defendant ONLINE LAND SALES told Plaintiff that the Subject Property could be "accessed via a small 4WD dirt trail off of Chicken Ranch Road. There is also a 60 ft. legal recorded easement in place for guaranteed access from the county plat maps. Below is representation of the 60 ft' [sic] easement to your property." Through its employee Eileen Sunga, Defendant ONLINE LAND SALES LLC provided Plaintiff

- 16 -

COMPLAINT FOR DAMAGES PURSUANT TO RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), INTENTIONAL MISREPRESENTATION, CONVERSION, VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200

SEREN LEGAL

with a copy of the county plat map highlighting the purported easement. Again, this communication was accomplished by using the internet and internet-based communications.

87. On or around July 29, 2018, Plaintiff again contacted Defendant ONLINE LAND SALES about access to the Subject Property. Defendant ONLINE LAND SALES advised Plaintiff through email that they had tried telephoning Plaintiff. However, Plaintiff never received any telephone calls and his phone records revealed no calls. Plaintiff advised them of such.

88. From February 2019 through August 2020, Plaintiff contacted Defendant ONLINE LAND SALES LLC through its employee Eileen Sunga and using the internet and internet-based communications, to inquire about whether Defendant SCOTT WIGGINTON would sign a land lease agreement so that Plaintiff could access the Subject Property as promised by Defendant ONLINE LAND SALES LLC in its promotional information and in its contract with Plaintiff.

89. On or around February 25, 2019, Lori Murphy, on behalf of Defendants CLASSIC COUNTRY LAND LLC and SCOTT WIGGINTON used email to indicate that those Defendants would not sign a land lease agreement because Plaintiff was purchasing the land, as opposed to leasing it. However, Ms. Murphy refused to acknowledge that Defendant ONLINE LAND SALES LLC was not the legal owner of the property and, therefore, could not vest Plaintiff with any rights in it.

90. On or around March 1, 2019, Plaintiff, using email, explained to Defendants ONLINE LAND SALES LLC, CLASSIC COUNTRY LAND LLC, and SCOTT WIGGINTON, through their employees Eileen Sunga and Lori Murphy that he had been unable to access the property for more than a year and that he would be unable to access the Subject Property without some sort of documentation.

- 17 -

COMPLAINT FOR DAMAGES PURSUANT TO RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), INTENTIONAL MISREPRESENTATION, CONVERSION, VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200

SEREN LEGAL

91. On or around March 13, 2019, Defendant ONLINE LAND SALES LLC sent Plaintiff an email stating that they would follow up when Defendants SCOTT WIGGINTON and CLASSIC COUNTRY LAND LLC completed the paperwork, making it sound as though those Defendants had agreed to do so.

92. On or around August 6, 2020, Plaintiff used email to ask Defendant ONLINE LAND SALES LLC when it would sign a land lease agreement so that Plaintiff could contract with the United States Department of Agriculture to provide crops grown on the Subject Property. On or around August 7, 2020, Defendant ONLINE LAND SALES LLC responded to Plaintiff's email communication by forwarding an email communication from Lori Murphy, employee of Defendant CLASSIC COUNTRY LAND LLC, who asked, "What kind of 'farm' is he doing? because we had several issues a few years ago with pot growing illegally in CA." Ms. Murphy then said, "We urgently need to know in order for us to proceed today." Defendant ONLINE LAND SALES LLC reiterated that if the information was provided that day, they would process the paperwork. Plaintiff explained in a responsive email that he did not know what kind of crops the USDA would want until he was able to enter into a contract with them and see what the options were. Given that the USDA is a federal entity, it is understood that such crops would not be marijuana. No Defendant ever signed the paperwork despite assurances they would do so.

93. In response to Defendant SCOTT WIGGINTON's refusal to sign the land lease agreement, Defendant BRIAN QUILTY signed two versions of the land lease deed: one on behalf of Plaintiff as an individual and one on behalf of Plaintiff's LLC. However, because Defendants BRIAN QUILTY and ONLINE LAND SALES LLC had no ownership interest

- 18 -

COMPLAINT FOR DAMAGES PURSUANT TO RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), INTENTIONAL MISREPRESENTATION, CONVERSION, VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200

SEREN LEGAL

in the Subject Property, the USDA would not honor the land lease agreement and contract with Plaintiff.

94. On or around August 13, 2020, Defendants CLASSIC COUNTRY LAND LLC and SCOTT WIGGINTON, through their employee Lori Murphy, sent an email stating that there was "no [] problem accessing and using the lot" and based that information on what they had heard from other customers in the area. These Defendants did not indicate why other customers would be going to the Subject Property and whether they had any right to access the property.

95. Defendant ONLINE LAND SALES LLC received numerous payments from Plaintiff using the internet and communicated with him regarding these payments using the internet and internet-based communications. Dates for these payments include: March 14, 2018; April 15, 2018; May 16, 2018; June 13, 2018; July 13, 2018; August 15, 2018; September 15, 2018; October 15, 2018; November 16, 2018; December 16, 2018; January 16, 2019; February 15, 2019; March 15, 2019; April 16, 2019; May 16, 2019; June 16, 2019; July 16, 2019; August 16, 2019; August 28, 2019; September 18, 2019; October 18, 2019; November 20, 2019; December 19, 2019; January 20, 2020; February 18, 2020; March 17, 2020; April 17, 2020; May 20, 2020; June 18, 2020; July 17, 2020; August 18, 2020; September 18, 2020; October 15, 2020; November 22, 2020; December 14, 2020; January 19, 2021; February 18, 2021; March 20, 2021; April 16, 2021; April 29, 2021; May 4, 2021; May 7, 2021; May 9, 2021; May 14, 2021.

96. Between Plaintiff's pay-off in May 2021 and November 22, 2021, Defendant ONLINE LAND SALES LLC sent Plaintiff multiple email communications indicating that he was late on his payment and threatening to charge a late payment.

- 19 -

COMPLAINT FOR DAMAGES PURSUANT TO RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), INTENTIONAL MISREPRESENTATION, CONVERSION, VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200

97. On or about May 16, 2021, Defendant ONLINE LAND SALES LLC through its employee Eileen Sunga and using the internet and internet-based communications, stated that it had started processing Plaintiff's deed. The deed documentation shows that Brian Quilty did not sign the deed transferring ownership until July 17, 2021 and the deed transferring ownership to ONLINE LAND SALES LLC was not signed until August 2, 2021.

98. On or about September 30, 2021, Defendant ONLINE LAND SALES LLC through its employee Eileen Sunga and using the internet and internet-based communications, in response to Plaintiff's demands for a deed that included the easement access he had been promised, stated that Defendant had provided the only deed Plaintiff was going to get and that if he had "documentation stating" that he was entitled to easement access to "[K]indly send [them] a scanned copy."

99. In January 2022, Defendant ONLINE LAND SALES LLC, through its employee "Diane" and using text message communications, advised Plaintiff that the "land specialist" was looking into Plaintiff's concern about the inability to access the Subject Property using the easement and the fact the surveyor hired by Plaintiff also could not access the Subject Property. No land specialist ever contacted Plaintiff.

**SECOND CAUSE OF ACTION**
**Intentional Misrepresentation, CA Civil Code § 1710**
(Against All Defendants)

100.     Plaintiff alleges each and every paragraph above and below incorporating each by reference as though set forth in full in this cause of action.

101.     In or about June 2018, Defendant SCOTT WIGGINTON affirmatively told Plaintiff that the Subject Property had easement access and that he would "fix" everything so that Plaintiff could access the property.

- 20 -

SEREN LEGAL

102.     In or about June 2018, Defendant ONLINE LAND SALES LLC affirmatively told Plaintiff that the Subject Property had recorded easement access and provided a highlighted plat map.

103.     In or about June 2018, Defendant CLASSIC COUNTRY LAND LLC affirmatively told Defendant ONLINE LAND SALES LLC, knowing that the information would be relayed to Plaintiff, both that the Subject Property had easement access and that the dirt road identified as an "easement" was in fact a public road.

104.     Plaintiff is informed and believes, and based thereon alleges, that none of these Defendants believed that the Subject Property had easement or public road access at the time they made the above-described statements.

105.     Alternatively, Plaintiff is informed and believes, and based thereon alleges, that all Defendants acted recklessly with regard to their statements that the Subject Property had easement access of any kind and/or that the purported easement was a public road.

106.     The advertisement for the Subject Property and the contract-for-deed signed and executed by Plaintiff and Defendant ONLINE LAND SALES LLC stated clearly that Plaintiff would have access to the Subject Property as soon as he entered into the contract for the Subject Property.

107.     As described in detail above, Defendants ONLINE LAND SALES LLC, CLASSIC COUNTRY LAND LLC, and SCOTT WIGGINTON strung Plaintiff along with promises of future action that would grant Plaintiff access to the Subject Property if only one more thing could be done or if only more information would be provided. Plaintiff is informed and believes, and based thereon alleges, that Defendants, and each of them, orchestrated

COMPLAINT FOR DAMAGES PURSUANT TO RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), INTENTIONAL MISREPRESENTATION, CONVERSION, VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200

SEREN LEGAL

these efforts together to conceal from Plaintiff until he paid off the property that there was no access to the Subject Property.

108.        As described in detail above, Defendants ONLINE LAND SALES LLC and CLASSIC COUNTRY LAND LLC promised Plaintiff that they, and each of them, would process the land lease paperwork so that Plaintiff could enter into a contract with the USDA. Plaintiff is informed and believes, and based thereon alleges, that neither Defendant intended to sign the lease agreement. Had they done so, Plaintiff would have learned the truth of the access situation before paying off the contract.

109.        Defendants, and each of them, intended that Plaintiff would rely on these affirmative misrepresentations and concealments, and/or statements made with reckless disregard for the truth, with the result that Plaintiff would pay off the contract in full or default and Defendants' would be able to keep Plaintiff's money.

110.        Plaintiff's reliance on Defendants' statements was reasonable because the contract contemplated the possibility of unrecorded easements and all of the Defendants assured Plaintiff there was easement access, and otherwise, to the Subject Property.

111.        Plaintiff has been harmed and his reasonable reliance on Defendants' statements was a substantial factor in causing that harm.

112.        Plaintiff is entitled to punitive damages for these misrepresentations.

**THIRD CAUSE OF ACTION**
**Concealment, CA Civil Code § 1710**
(Against All Defendants)

113.        Plaintiff alleges each and every paragraph above and below incorporating each by reference as though set forth in full in this cause of action.

///

- 22 -

COMPLAINT FOR DAMAGES PURSUANT TO RACKETEER INFLUENCED AND
CORRUPT ORGANIZATIONS ACT ("RICO"), INTENTIONAL MISREPRESENTATION,
CONVERSION, VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200

SEREN LEGAL

114.     Defendants, and each of them, knew or had reason to know that the Subject Property had no deeded or easement access.

115.     Defendant, and each of them, worked together to string Plaintiff along into believing that the Subject Property did in fact have easement access.

116.     Plaintiff did not know that the Subject Property lacked access.

117.     Defendants, and each of them, intended to deceive Plaintiff by withholding that the Subject Property had no access.

118.     Had Plaintiff known that the Subject Property did not have access, Plaintiff reasonably would have behaved differently.

119.     Plaintiff was harmed and Defendants' concealment was a substantial factor in causing that harm.

**FOURTH CAUSE OF ACTION**
**Conversion, CA Law**
(Against All Defendants)

120.     Plaintiff alleges each and every paragraph above and below incorporating each by reference as though set forth in full in this cause of action.

121.     Defendants, and each of them, used the misrepresentations outlined above to deprive Plaintiff of his money and opportunity.

122.     Defendants, and each of them, shared in the money Plaintiff paid for the Subject Property.

123.     When Plaintiff demanded a refund, Defendants refused to return eighty percent of the money paid by Plaintiff.

124.     Plaintiff did not consent to the taking of his money and opportunity by deceit.

125.     Plaintiff was harmed by Defendants' taking of his money and opportunity by deceit.

- 23 -

COMPLAINT FOR DAMAGES PURSUANT TO RACKETEER INFLUENCED AND
CORRUPT ORGANIZATIONS ACT ("RICO"), INTENTIONAL MISREPRESENTATION,
CONVERSION, VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200

126.    Defendants' behavior was a substantial factor in causing Plaintiff's harm.

127.    Plaintiff is entitled to treble damages for Defendants' acts of conversion.

**FIFTH CAUSE OF ACTION**
**UNFAIR BUSINESS PRACTICES, CA BUS. & PROF. CODE § 17200**
(Against All Defendants)

128.    Plaintiff alleges each and every paragraph above and below incorporating each by reference as though set forth in full in this cause of action.

129.    Defendants' promises that Plaintiff would be allowed access to a landlocked parcel and fraudulent misrepresentations regarding the ability to access said parcel constitute unlawful and unfair business practices.

130.    Defendant ONLINE LAND SALES LLC's initial representations that it had the authority to sell the Subject Property and all rights of ownership therewith to Plaintiff, which were not true, constitute unlawful and unfair business practices.

131.    Plaintiff is entitled to receive restitution for monies paid for the Subject Property under these conditions.

///

///

///

///

///

///

///

///

///

- 24 -

COMPLAINT FOR DAMAGES PURSUANT TO RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), INTENTIONAL MISREPRESENTATION, CONVERSION, VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200

SEREN LEGAL

**PRAYER FOR RELIEF**

Wherefore Plaintiff prays:

1.    For compensatory, general, and special damages according to proof at trial;

2.    For punitive damages where such damages are alleged and recoverable;

3.    For treble damages where such damages are alleged and recoverable;

4.    For pre-judgment and post-judgment interest at the legal rate according to proof at trial;

5.    For reasonable attorney's fees to the extent allowed by law;

6.    For cost of suit incurred herein on all causes of action; and

7.    Any other such relief that the Court deems just and proper.

DATED:  1/17/2023

By_____
            K. KASEY CORBIT, Attorney for DIMITRI
            MAYE

- 25 -

COMPLAINT FOR DAMAGES PURSUANT TO RACKETEER INFLUENCED AND
CORRUPT ORGANIZATIONS ACT ("RICO"), INTENTIONAL MISREPRESENTATION,
CONVERSION, VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SEREN LEGAL

# EXHIBIT 1

COMPLAINT FOR DAMAGES PURSUANT TO RACKETEER INFLUENCED AND
CORRUPT ORGANIZATIONS ACT ("RICO"), INTENTIONAL MISREPRESENTATION,
CONVERSION, VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200

Thank you for your purchase!

Your payments are due monthly.

Payment Methods:

Click on "Make a Payment" on the top of any page on Onlinelandsales.com

Or

Mail Payment by Cashiers Check or Money Order to:

Online Land Sales LLC
PO Box 948
Zephyr Cove, NV 89448

Or

Direct Debit from your Checking Account (Receive 1% off). The authorization form is included as a separate document for you to fill out and return to us.

Or
Call Online Land Sales LLC Customer Representative with your Banking Information (have a check handy)

BE SURE TO INCLUDE YOUR LOAN NUMBER WITH ALL PAYMENTS!
Loan Number - **3890783**

Thank You,
Online Land Sales LLC
service@onlinelandsales.com
(530) 725-8671 or 1-866-878-8334

\*\*Please make sure to sign, make a copy, and return signed signature page back to us\*\*

CONTRACT FOR DEED
Transaction Number: **3890783**

THIS DAY this agreement is entered into by and between Online Land Sales LLC,
hereinafter referred to as "SELLER", and Dimitri Maye, hereinafter referred to as
"PURCHASER", whether one or more, on the terms and conditions and for the
purposes hereinafter set forth:
1.
**SALE OF PROPERTY**

For and in consideration of TEN DOLLARS ($10.00) and other good and valuable
considerations the receipt and sufficiency of which is hereby acknowledged, Seller
does hereby agree to convey, sell, assign, transfer and set over unto Purchaser, the
following property situated in Lassen County, State of CA, said property being
described as follows:

**Lot 34 Ravendale Ranch - SE4, Section 1, T34N, R14E, MDM
160 Acres +/-
Lassen County, CA**

Together with all rights of ownership associated with the property, including, but not
limited to, all easements and rights benefiting the premises, whether or not such
easements and rights are of record, and all tenements, hereditaments,
improvements and appurtenances, including all lighting fixtures, plumbing fixtures,
shades, venetian blinds, curtain rods, storm windows, storm doors, screens,
awnings, if any, now on the premises.
SUBJECT TO all recorded easements, rights-of-way, conditions, encumbrances and
limitations and to all applicable building and use restrictions, zoning laws and
ordinances, if any, affecting the property.
2.
**PURCHASE PRICE AND TERMS**

The purchase price of the property shall be ($55,000.00) Fifty five thousand dollars
and cents. The purchaser does hereby agree to pay to the order of the Seller $121
upon execution of this agreement (this amount has been received as the date of
preparation of this contract), with the balance of (54,879.00) Fifty four thousand
eight hundred and seventy nine dollars and centsbeing due and payable as follows:

XX☐(b)Balance payable, together with interest on the whole sum that shall be from
time to time unpaid at the rate of 9.00%, per annum, payable in the amount of
$550.00 Five hundred and fifty dollars and cents dollars per month beginning on the
March 15, 2018 and continuing on the same day of each month thereafter until fully
paid.

If interest is charged, interest shall be computed monthly and deducted from payment and the balance of payment shall be applied on principal.

3.

## TIME OF THE ESSENCE

Time is of the essence in the performance of each and every term and provision in this agreement by Purchaser.

4.

SECURITY

This contract shall stand as security of the payment of the obligations of Purchaser.

5.

MAINTENANCE OF IMPROVEMENTS

All improvements on the property, including, but not limited to, buildings, trees or other improvements now on the premises, or hereafter made or placed thereon, shall be a part of the security for the performance of this contract and shall not be removed therefrom. Purchaser shall not commit, or suffer any other person to commit, any waste or damage to said premises or the appurtenances and shall keep the premises and all improvements in as good condition as they are now.

6.

CONDITION OF IMPROVEMENTS

Purchaser agrees that the Seller has not made, nor makes any representations or warranties as to the condition of the premises, the condition of the buildings, appurtenances and fixtures locate thereon, and/or the location of the boundaries. Purchaser accepts the property in its "as-is" condition without warranty of any kind.

7.

## POSSESSION OF PROPERTY

Purchaser shall take possession of the property and all improvements thereon upon execution of this contract and shall continue in the peaceful enjoyment of the property so long as all payments due under the terms of this contract are timely made. Purchaser agrees to keep the property in a good state of repair and in the event of termination of this contract, Purchaser agrees to return the property to Seller in substantially the same condition as it now exists, ordinary wear and tear excepted. Seller reserves the right to inspect the property at any time with or without notice to Purchaser.

8.

TAXES, INSURANCE AND ASSESSMENTS

Taxes and Assessments: During the term of this contract :(Select one)

XX☐(b)Seller shall pay all taxes and assessments levied against the property. In the event that Seller pays the taxes and insurance, Purchaser shall reimburse Seller for same upon 30 days notice to purchaser.

9.

**DEFAULT**

If the Purchaser shall fail to perform any of the covenants or conditions contained in this contract on or before the date on which the performance is required, the Seller shall give Purchaser notice of default or performance, stating the Purchaser is allowed fourteen (14) days from the date of the Notice to cure the default or performance.  In the event the default or failure of performance is not cured within the 14 day time period, then Seller shall have any of the following remedies, in the discretion of Seller:

(a)give the Purchaser a written notice specifying the failure to cure the default and informing the Purchaser that if the default continues for a period of an additional fifteen (15) days after service of the notice of failure to cure, that without further notice, this contract shall stand cancelled and Seller may regain possession of the property as provided herein; or

(b)give the Purchaser a written notice specifying the failure to cure the default and informing the Purchaser that if the default continues for a period of an additional fifteen (15) days after service of the notice of failure to cure, that without further notice, the entire principal balance and unpaid interest shall be immediately due and payable and Seller may take appropriate action against Purchaser for collection of same according to the laws of the State of CA.

In the event of default in any of the terms and conditions or installments due and payable under the terms of this contract and Seller elects 9(a), Seller shall be entitled to immediate possession of the property.

In the event of default and termination of the contract by Seller, Purchaser shall forfeit any and all payments made under the terms of this contract including taxes and assessments as liquidated damages, Seller shall be entitled to recover such other damages as they may be due which are caused by the acts or negligence of Purchaser.

The parties expressly agree that in the event of default not cured by the Purchaser and termination of this agreement, and Purchaser fails to vacate the premises, Seller shall have the right to obtain possession by appropriate court action.

10.

**DEED AND EVIDENCE OF TITLE**

Upon total payment of the purchase price and any and all late charges, and other amounts due Seller, Seller agrees to deliver to Purchaser a Warranty Deed to the subject property, at Seller's expense, free and clear of any liens or encumbrances other than taxes and assessments for the current year.

11.

**NOTICES**

All notices required hereunder shall be deemed to have been made when deposited in the U. S. Mail, postage prepaid, certified, and returns receipt requested, to the Purchaser or Seller at the addresses listed below.  All notices required hereunder may he sent to:

Seller:
Online Land Sales LLC
PO Box 948_____
Zephyr Cove, NV  89448

Purchaser:
Dimitri Maye
3170 Garrity Way
San Pablo
CA
and when mailed, postage prepaid, to said address, shall be binding and conclusively
presumed to be served upon said parties respectively.
12.
ASSIGNMENT OR SALE

Purchaser shall not sell, assign, transfer or convey any interest in the subject
property or this agreement, without first securing the written consent of the Seller.

13.
PREPAYMENT

Purchaser to have the right to prepay, without penalty, the whole or any part of the
balance remaining unpaid on this contract at any time before the due date and
receive an additional 10% off the remaining balance.
14.
ATTORNEY FEES

In the event of default, Purchaser shall pay to Seller, Seller's reasonable and actual
attorneys' fees and expenses incurred by Seller in enforcement of any rights of
Seller.  All attorney fees shall be payable prior to Purchaser's being deemed to have
corrected any such default.
15.
LATE PAYMENT CHARGES

If Purchaser shall fail to pay, within seven (07) days after due date, any installment
due hereunder, Purchaser shall be required to pay an additional charge of ten (10%)
percent of the late installment. Such charge shall be paid to Seller at the time of
payment of the past due installment.
16.
CONVEYANCE OR MORTGAGE BY SELLER

If the Seller's interest is now or hereafter encumbered by mortgage, the Seller
covenants that Seller will meet the payments of principal and interest thereon as
they mature and produce evidence thereof to the Purchaser upon demand. In the
event the Seller shall default upon any such mortgage or land contract, the
Purchaser shall have the right to do the acts or make the payments necessary to
cure such default and shall be reimbursed for so doing by receiving, automatically,
credit to this contract to apply on the payments due or to become due hereon.
The Seller reserves the right to convey, his or her interest in the above described
land and such conveyance hereof shall not be a cause for rescission but such
conveyance shall be subject to the terms of this agreement.
The Seller may, during the lifetime of this contract, place a mortgage on the premises
above described, which shall be a lien on the premises, superior to the rights of the
Purchaser herein, or may continue and renew any existing mortgage thereon,

provided that the aggregate amount due on all outstanding mortgages shall not at any time be greater than the unpaid balance of the contract.

17.
ENTIRE AGREEMENT

This Agreement embodies and constitutes the entire understanding between the parties with respect to the transactions contemplated herein. All prior or contemporaneous agreements, understandings, representations, oral or written, are merged into this Agreement.

18.
AMENDMENT – WAIVERS

This Agreement shall not be modified, or amended except by an instrument in writing signed by all parties.
No delay or failure on the part of any party hereto in exercising any right, power or privilege under this Agreement or under any other documents furnished in connection with or pursuant to this Agreement shall impair any such right, power or privilege or be construed as a waiver of any default or any acquiescence therein. No single or partial exercise of any such right, power or privilege shall preclude the further exercise of such right, power or privilege, or the exercise of any other right, power or privilege. No waiver shall be valid against any party hereto unless made in writing and signed by the party against whom enforcement of such waiver is sought and then only to the extent expressly specified therein.
19.
SEVERABILITY

If any one or more of the provisions contained in this Agreement shall be held illegal or unenforceable by a court, no other provisions shall be affected by this holding. The parties intend that in the event one or more provisions of this agreement are declared invalid or unenforceable, the remaining provisions shall remain enforceable and this agreement shall be interpreted by a Court in favor of survival of all remaining provisions.
20.
HEADINGS

Section headings contained in this Agreement are inserted for convenience of reference only, shall not be deemed to be a part of this Agreement for any purpose, and shall not in any way define or affect the meaning, construction or scope of any of the provisions hereof.
21.
PRONOUNS

All pronouns and any variations thereof shall be deemed to refer to the masculine,

feminine, neuter, singular, or plural, as the identity of the person or entity may require. As used in this agreement: (1) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (2) words in the singular shall mean and include the plural and vice versa, and (3) the word "may" gives sole discretion without any obligation to take any action.

22.

## JOINT AND SEVERAL LIABILITY

All Purchasers, if more than one, covenants and agrees that their obligations and liability shall be joint and several.

23.

PURCHASER'S RIGHT TO REINSTATE AFTER ACCELERATION

If Purchaser defaults and the loan is accelerated, then Purchaser shall have the right of reinstatement as allowed under the laws of the State of CA, provided that Purchaser: (a) pays Lender all sums which then would be due under this agreement as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; and (c) pays all expenses incurred in enforcing this agreement, including, but not limited to, reasonable attorneys' fees, and other fees incurred for the purpose of protecting Seller's interest in the Property and rights under this agreement. Seller may require that Purchaser pay such reinstatement sums and expenses in one or more of the following forms, as selected by Seller: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity or (d) Electronic Funds Transfer. Upon reinstatement by Purchaser, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.

24.

## HEIRS AND ASSIGNS

This contract shall be binding upon and to the benefit of the heirs, administrators, executors, and assigns of the parties hereto.  However, nothing herein shall authorize a transfer in violation of paragraph (12).

25.

## OTHER PROVISIONS

*Seller's Notary Only*

WITNESS THE SIGNATURES of the Parties this the  _____.

**SELLER:**

X:_____
Online Land Sales LLC

PO Box 948
Zephyr Cove, NV  89448

**PURCHASER:**

X:_____
Dimitri Maye
3170 Garrity Way, San Pablo, CA 94806

**Signature:** _____
Dimitri Maye (Feb 26, 2019)

**Email:** highspirit33@gmail.com

**Signature:** *Land Sales Office*_____
Land Sales Office (Feb 28, 2018)

**Email:** admin@landbidz.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SEREN LEGAL

# EXHIBIT 2

COMPLAINT FOR DAMAGES PURSUANT TO RACKETEER INFLUENCED AND
CORRUPT ORGANIZATIONS ACT ("RICO"), INTENTIONAL MISREPRESENTATION,
CONVERSION, VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200

DocuSign Envelope ID: 34fbe0634d8b75b5...



1420 West Exchange Parkway, Suite 120A, Allen, Texas 75013

Thank you for your purchase!

Your payments are due monthly.

Please visit www.classiccountryland.com and click the "Make Payment" tab for payment options.

### BE SURE TO INCLUDE YOUR LOAN NUMBER WITH ALL PAYMENTS!

Regards,
Scott Wigginton
Classic Country Land
972-649-6200 X 102

DocuSign Envelope ID: ...

**CONTRACT #: CA15-0660**

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU
MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS
INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR
SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

### CONTRACT FOR DEED

THIS DAY this agreement is entered into by and between Scott Wigginton, hereinafter
referred to as "SELLER", whether one or more, and Online Land Sales, LLC, hereinafter referred
to as "PURCHASER", whether one or more, on the terms and conditions and for the purposes
hereinafter set forth:

1.  **SALE OF PROPERTY**

For and in consideration of TEN DOLLARS ($10.00) and other good and valuable
considerations the receipt and sufficiency of which is hereby acknowledged, Seller does hereby
agree to convey, sell, assign, transfer and set over unto Purchaser, the following property situated
in Lassen County, State of California, said property being described as follows: *(Type description
or attach description as exhibit "A")*

SE4, Section 1, T34N, R14E, MDM, +/- 160 acres Ravendale Ranch

APN 057-030-34

Together with all rights of ownership associated with the property, including, but not limited to,
all easements and rights benefiting the premises, whether or not such easements and rights are of
record, and all tenements, hereditaments, improvements and appurtenances.

SUBJECT TO all recorded easements, rights-of-way, conditions, encumbrances and
limitations and to all applicable building and use restrictions, zoning laws and ordinances, if any,
affecting the property.

Contract for Deed - Page 1

DocuSign Envelope ID: 6923DA25-BCAE-4D29-9A2D-CA

## 2.  PURCHASE PRICE AND TERMS

The purchase price of the property shall be ⬛⬛⬛ The purchaser does hereby agree to pay to the order of the Seller the sum of ($0.00) upon execution of this agreement, with the balance of ⬛⬛⬛ being due and payable as follows: (Select one)

☒ (a)    Balance payable, together with interest on the whole sum that shall be from time to time unpaid at the rate of 9.99 per cent, per annum, payable in the amount of ⬛⬛⬛ dollars per month beginning on the first day of June, 2015 and continuing on the same day of each month thereafter until fully paid.

☐ (b)    Balance payable, together with interest on the whole sum that shall be from time to time unpaid at the rate of        per cent, per annum, payable in the amount of $        dollars per month beginning on the        day of        , 20        , and continuing on the same day of each month thereafter until the        day of        , 20        , when all remaining principal and interest shall be paid. (Balloon payment)

If interest is charged, interest shall be computed monthly and deducted from payment and the balance of payment shall be applied on principal.

☐ There will be a service fee charge per month added to your payment to cover servicing costs. This fee will be waived if you sign up through us for Automatic Payments.

☐ Payment Protection Program $        charge per month added to your monthly payment which allows you to skip 1 payment in a 24 month period if needed. This is an optional service that you have chosen to do.

## 3.  TIME OF THE ESSENCE

Time is of the essence in the performance of each and every term and provision in this agreement by Purchaser.

## 4.  SECURITY

Contract for Deed - Page 2

DocuSign Envelope ID: ...

This contract shall stand as security of the payment of the obligations of Purchaser.

### 5. MAINTENANCE OF IMPROVEMENTS

All improvements on the property, including, but not limited to, buildings, trees or other improvements now on the premises, or hereafter made or placed thereon, shall be a part of the security for the performance of this contract and shall not be removed therefrom. Purchaser shall not commit, or suffer any other person to commit, any waste or damage to said premises or the appurtenances and shall keep the premises and all improvements in as good condition as they are now.

### 6. CONDITION OF IMPROVEMENTS

Purchaser agrees that the Seller has not made, nor makes any representations or warranties as to the condition of the premises, the condition of the buildings, appurtenances and fixtures locate thereon, and/or the location of the boundaries. Purchaser accepts the property in its "as-is" condition without warranty of any kind.

### 7. POSSESSION OF PROPERTY

Purchaser shall take possession of the property and all improvements thereon upon execution of this contract and shall continue in the peaceful enjoyment of the property so long as all payments due under the terms of this contract are timely made. Purchaser agrees to keep the property in a good state of repair and in the event of termination of this contract, Purchaser agrees to return the property to Seller in substantially the same condition as it now exists, ordinary wear and tear excepted. Seller reserves the right to inspect the property at any time with or without notice to Purchaser.

### 8. TAXES, INSURANCE AND ASSESSMENTS

**Taxes and Assessments:** During the term of this contract Seller shall pay all taxes and assessments levied against the property. In the event that Seller pays the taxes, Purchaser shall reimburse Seller for same upon 30 days notice to purchaser. Should the Purchaser fail to

Contract for Deed - Page 3

pay any tax or assessment, or installment thereof, when due, the amounts thus expended shall be a lien on said premises and may be added to the balance then unpaid, or collected by Seller, in the discretion if Seller with interest until paid at the rate of the nine per cent per annum.

**Content Insurance:** Purchaser shall be solely responsible for obtaining insurance of the contents, insuring contents owned by Purchaser.  Seller shall be solely responsible for obtaining insurance on all contents owned by Seller.

## 9.  DEFAULT

If the Purchaser shall fail to perform any of the covenants or conditions contained in this contract on or before the date on which the performance is required, the Seller shall give Purchaser notice of default or performance, stating the Purchaser is allowed fourteen (14) days from the date of the Notice to cure the default or performance.  In the event the default or failure of performance is not cured within the 14 day time period, then Seller shall have any of the following remedies, in the discretion of Seller:

(a)     give the Purchaser a written notice specifying the failure to cure the default and informing the Purchaser that if the default continues for a period of an additional fifteen (15) days after service of the notice of failure to cure, that without further notice, this contract shall stand cancelled and Seller may regain possession of the property as provided herein; or

(b)     give the Purchaser a written notice specifying the failure to cure the default and informing the Purchaser that if the default continues for a period of an additional fifteen (15) days after service of the notice of failure to cure, that without further notice, the entire principal balance and unpaid interest shall be immediately due and payable and Seller may take appropriate action against Purchaser for collection of same according to the laws of the State of Texas.

In the event of default in any of the terms and conditions or installments due and payable under the terms of this contract and Seller elects 9(a), Seller shall be entitled to immediate possession of the property.

In the event of default and termination of the contract by Seller, Purchaser shall forfeit any

Contract for Deed - Page 4

DocuSign Envelope ID: 8B9DBAB5-F2C2-4B45-8D46-35C6C2F69C17

Purchaser shall not sell, assign, transfer or convey any interest in the subject property or this agreement, without first securing the written consent of the Seller.

## 13. PREPAYMENT

Purchaser to have the right to prepay, without penalty, the whole or any part of the balance remaining unpaid on this contract at any time before the due date.

## 14. ATTORNEY FEES

In the event of default, Purchaser shall pay to Seller, Seller's reasonable and actual attorneys' fees and expenses incurred by Seller in enforcement of any rights of Seller.  All attorney fees shall be payable prior to Purchaser's being deemed to have corrected any such default.

## 15. LATE PAYMENT CHARGES

If Purchaser shall fail to pay, within seven (7) days after due date, any installment due hereunder, Purchaser shall be required to pay an additional charge of eight (8%) percent of the late installment. Such charge shall be paid to Seller at the time of payment of the past due installment. There will be a $35.00 fee for all returned payment transactions.

## 16. CONVEYANCE OR MORTGAGE BY SELLER

If the Seller's interest is now or hereafter encumbered by mortgage, the Seller covenants that Seller will meet the payments of principal and interest thereon as they mature and produce evidence thereof to the Purchaser upon demand. In the event the Seller shall default upon any such mortgage or land contract, the Purchaser shall have the right to do the acts or make the payments necessary to cure such default and shall be reimbursed for so doing by receiving, automatically, credit to this contract to apply on the payments due or to become due hereon.

The Seller reserves the right to convey, his or her interest in the above described land and such conveyance hereof shall not be a cause for rescission but such conveyance shall be subject to the terms of this agreement.

Contract for Deed - Page 6

DocuSign Envelope ID: ...

institution whose deposits are insured by a federal agency, instrumentality or entity or (d) Electronic Funds Transfer. Upon reinstatement by Purchaser, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.

## 24. HEIRS AND ASSIGNS

This contract shall be binding upon and to the benefit of the heirs, administrators, executors, and assigns of the parties hereto.  However, nothing herein shall authorize a transfer in violation of paragraph (12).

## 25. OTHER PROVISIONS

_____

_____

| Seller(s) Name and Address | Buyer(s) Name and Address |
|---|---|
| Name: Scott Wigginton | Name: Online Land Sales, LLC |
| Address: 1420 West Exchange Pkwy, Suite 120a | Address: PO Box 948 |
| City:Allen | City: Zephyr |
| State: Texas        Zip:75013 | State: NV            Zip: 89448 |
| Phone: 972-649-6200 x102 | Phone: |

_____        5/1/2015
Seller                                               Date

_____        5/1/2015
Purchaser                                         Date

Contract for Deed - Page 9

and all payments made under the terms of this contract including taxes and assessments as liquidated damages, Seller shall be entitled to recover such other damages as they may be due which are caused by the acts or negligence of Purchaser.

The parties expressly agree that in the event of default not cured by the Purchaser and termination of this agreement, and Purchaser fails to vacate the premises, Seller shall have the right to obtain possession by appropriate court action.

**10. DEED AND EVIDENCE OF TITLE**

Upon total payment of the purchase price and any and all late charges, and other amounts due Seller, Seller agrees to deliver to Purchaser a Warranty Deed to the subject property, at Seller's expense, free and clear of any liens or encumbrances other than taxes and assessments for the current year.

**11. NOTICES**

All notices required hereunder shall be deemed to have been made when deposited in the U. S. Mail, postage prepaid, certified, return receipt requested, to the Purchaser or Seller at the addresses listed below. All notices required hereunder may be sent to:



Seller:

Scott Wigginton

1420 West Exchange Parkway, Suite 120a

Allen, Tx 75013

Purchaser:

Online Land Sales, LLC

PO Box 948

Zephyr, NV 89448

and when mailed, postage prepaid, to said address, shall be binding and conclusively presumed to be served upon said parties respectively.

**12. ASSIGNMENT OR SALE**

Contract for Deed - Page 5

---

*We would like to also clarify that we will only be processing the Land Deed/registering your name with the county once you have completely paid off the property.*

**Please let us know how you would like to proceed.**

**If there is anything else we can help you with, please do not hesitate to contact us. We appreciate the opportunity to answer your concerns and assist you.**

Thank you very much for your understanding and cooperation.

On Sat, Jun 9, 2018 at 3:57 AM, Meache Man <highspirit33@gmail.com> wrote:

[Quoted text hidden]
[Quoted text hidden]