1
2
3
4
5
6
7

8      UNITED STATES DISTRICT COURT

9      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  DIMITRI MAYE,                                    No.  2:23-cv-00173-DAD-CKD

12              Plaintiff,

13      v.                                           FINDINGS AND RECOMMENDATIONS

14  ONLINE LAND SALES LLC, et al.,

15              Defendant.

16

17         Plaintiff, Dimitri Maye, filed this federal question and diversity jurisdiction action

18  pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Plaintiff seeks damages, restitution, and

19  injunctive relief under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18

20  U.S.C. §§ 1961 et seq., and the laws of the State of California.

21         In the motion presently before the court, defendants Scott Wigginton (sued as

22  Wiggington) and Classic Country Land LLC move under Rule 12(b)(6) of the Federal Rules of

23  Civil Procedure to dismiss plaintiff's claims against them. (ECF No. 14.) On October 5, 2023, the

24  presiding district judge referred this matter to the undersigned for the purpose of these findings

25  and recommendations. (ECF No. 18.) See 28 U.S.C. § 636(b)(1). For the reasons set forth below,

26  the undersigned recommends the court grant, in part, the moving defendants' motion under Rule

27  12(b)(6) and dismiss plaintiff's first, second, third, and fourth causes of action against them, with

28  leave to amend.

1

**ALLEGATIONS IN THE COMPLAINT**

2       Plaintiff filed the complaint on March 17, 2021. (ECF No. 1.) Plaintiff alleges the four

3   defendants, Online Land Sales LLC, Brian Quilty, Scott Wigginton, and Classic Country Land

4   LLC, "work in concert to sell inaccessible land through contract-for-deed schemes across the

5   country." (Id., ¶ 55.) The allegations in this section are taken from the complaint. For purposes of

6   this motion, the well-pleaded factual allegations are assumed to be true.

7       Plaintiff is the owner of a vacant and undeveloped lot of land in Lassen County, California

8   ("Subject Property"), which he purchased from defendant, Online Land Sales LLC ("OLS").

9   (ECF No. 1, ¶¶ 12-15.) The property is accessible only by a sixty-foot (60), four-wheel-drive dirt

10  trail of Chicken Ranch Road (hereinafter "easement"). (ECF No. 1, ¶ 21.)

11      Plaintiff and OLS contracted for plaintiff's purchase of the land on February 28, 2018, for

12  the purchase price of $55,000. (ECF No. 1, ¶ 15.) The contract states the land comes "with all

13  rights of ownership associated with the property, including, but not limited to, all easements and

14  rights benefiting the premises, whether or not such easements and rights are of record…." (Id., ¶

15  36.) The contract provides for immediate access to the land upon execution. (Id., ¶ 19.)

16      On or about June 12, 2018, defendant OLS provided plaintiff with a copy of a contract-

17  for-deed agreement it had with defendant, Classic Country Land LLC ("CCL"), for the subject

18  property. (ECF No. 1 at 5.)

19      On or before June 18, 2018, plaintiff attempted to access the Subject Property and found a

20  locked gate across the easement barring access. (ECF No. 1, ¶ 21.) Plaintiff requested access to

21  the easement to reach the Subject Property but was denied access to the property because his

22  name was not on the deed. (Id., ¶ 24.)

23      Plaintiff inquired at the County Recorder's Office and discovered that on or about June

24  24, 2010, Johnetta Ford, an unrelated third party, had recorded a contract-for-deed contract with

25  defendant Wigginton for which she had not filed a transfer or quitclaim deed. (ECF No. 1, ¶ 25.)

26  Plaintiff alleges Ms. Ford entered into two such contracts for the Subject Property and defaulted

27  both times. (Id., ¶ 29.)

28  ////

Ms. Ford recorded a quitclaim deed on or about June 25, 2018. (ECF No. 1, ¶ 26.) Prior to Ms. Ford's signing of the quitclaim deed, plaintiff called defendant Wigginton, who assured plaintiff the property had easement access. (Id., ¶ 31.) Plaintiff also sent email correspondence regarding this issue to defendant Quilty, who responded using a general email account for OLS. (Id., 32.)

On July 11, 2018, defendant CCL, through its employee Lori Murphy, advised plaintiff and defendant OLS that the 60-foot road that leads from Chicken Ranch Road to plaintiff's parcel was "a public road." (ECF No. 1, ¶ 33.) On or about July 16, 2018, defendant OLS, through its employee Eileen Sunga, told plaintiff the property could be "accessed via a small 4WD dirt trail off of Chicken Ranch Road. There is also a 60 ft. legal recorded easement in place…." (Id., ¶ 34.)

Plaintiff began developing prospects for commercial farming. (ECF No. 1, ¶ 37.) The United States Department of Agriculture ("USDA") would not contract with plaintiff until he had guaranteed access to the property. (Id.)

Plaintiff's contract-for-deed with OLS did not provide him legitimate access or rights to the property because defendant OLS was not on title and defendant Wigginton was the record owner. (ECF No. 1, ¶¶ 38, 44.) OLS represented that it had an ownership interest in the Subject Property based on its contract-for-deed agreement with CCL, but neither OLS nor CCL had an ownership interest in the Subject Property. (Id., ¶ 44.)

In or about March 2019, plaintiff contacted employees of defendants OLS and CCL and unsuccessfully tried to obtain a lease agreement signed by defendant Wigginton, whose name was on title. (ECF No. 1, ¶¶ 38-41.) Defendant CCL's employee, Lori Murphy, stated if plaintiff paid off the property, then defendant Wigginton would ensure plaintiff had access to the property. (Id., ¶ 41.) CCL, its employees, and Wigginton then refused to communicate further with plaintiff on the ground that his contract was with defendant OLS. (Id., ¶ 43.) On multiple occasions, plaintiff sent inquiries about land access to defendant OLS, who would forward the inquiries to defendant CCL and then reply to plaintiff. (Id.)

Neither OLS nor CCL ever told plaintiff the Subject Property lacked easement access. (ECF No. 1, ¶ 45.) Both acted in concert to make plaintiff believe that if he paid off the land, he

would gain access via the easement. (Id.)

In an effort to gain access to the land, plaintiff paid off the land in or about May 2021. (ECF No. 1, ¶ 46.) The contract provides both that a deed is to be provided to purchaser "upon total payment of the purchase price" and that time is of the essence "in the performance for each and every term" in the contract. (Id.)

On July 17, 2021, defendant Quilty signed a warranty deed transferring title of the property from defendant OLS to plaintiff. (ECF No. 1, ¶ 47.) However, defendant Wigginton did not sign a deed transferring a deed to defendant OLS until August 2, 2021. (Id.) The deed transferring the Subject Property from defendant Wigginton to defendant OLS was recorded on August 9, 2021, and the deed transferring the Subject Property from OLS to plaintiff was recorded on August 16, 2021. (Id.)

When plaintiff received his deed and again attempted to access the property, he was denied access because there is no right for the owner of the Subject Property to access the easement. (ECF No. 1, ¶ 49.) Plaintiff tried unsuccessfully to obtain an easement through other routes. (Id., ¶ 52.) Defendants have refused to give plaintiff any information about the basis for their statements that an easement exists. (Id., ¶ 53.)

Plaintiff asserts five causes of action against all defendants: (1) a civil violation of Racketeer Influenced and Corrupt Organizations ("RICO") (Count One); (2) intentional misrepresentation (Count Two); (3) fraudulent concealment (Count Three); (4) conversion (Count Four); and (5) unfair business practices (Count Five). (ECF No. 1 at ¶¶ 56-24.)

On May 8, 2023, defendant Wigginton and defendant CCL ("CCL defendants") filed the motion to dismiss presently before the court. (ECF No. 14.) Plaintiff's opposition to the motion (ECF No. 16) and defendants' reply (ECF No. 17) are also before the court. On October 5, 2023, the presiding district judge referred this matter to the undersigned for the purpose of these findings and recommendations. (ECF No. 18.)

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir.

1983). In ruling on such a motion, the court may consider material that is properly submitted as part of the complaint, documents that are not physically attached to the complaint where their authenticity is not contested and the plaintiffs' complaint necessarily relies on them, and matters of public record. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

"Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989), abrogated on other grounds by DaVinci Aircraft, Inc. v. United States, 926 F.3d 1117 (9th Cir. 2019). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. U.S. ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555; see also Iqbal, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the ... laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

////

////

**ANALYSIS**

The CCL defendants argue plaintiff's grounds one through four should be dismissed for failure to state a claim. (ECF No. 14 at 1-2.)[1] Defendants assert all five grounds are barred by the applicable statutes of limitations.[2] (Id.) The undersigned first considers the statute of limitations arguments advanced.

**I.      Statute of Limitations**

**A.      RICO (First Cause of Action)**

The four-year limitations period for a civil RICO action begins to run when a plaintiff knows or should know of the injury that underlies his cause of action. Grimmett v. Brown, 75 F.3d 506, 510 (9th Cir. 1996). The moving defendants argue plaintiff's RICO claim is untimely because he knew of his injury in June of 2018 and filed suit more than four and a half years later. (ECF No. 14-1 at 10.)

Plaintiff responds that he pleaded fraudulent concealment, and thus that the statute of limitations did not begin running until discovery of the truth. (ECF No. 16 at 9, 20-22.) Under the complaint's allegations, plaintiff discovered the truth sometime after July 17, 2021. (ECF No. 1, ¶¶ 47, 49.) Defendants argue in reply that plaintiff had, at a minimum, constructive notice of the injury on or before June of 2018. (ECF No. 17 at 3-4.)

"A statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence." Hexcel Corp. v. Ineos Polymers, Inc., 681 F.3d 1055, 1060 (9th Cir. 2012). The doctrine of fraudulent concealment is invoked only if the plaintiff both pleads and proves the defendant actively misled him, and that he had neither actual nor constructive

---

[1] Citations to page numbers in the parties' briefs refer to the page numbers assigned by CM/ECF at the top of the page.

[2] Defendants' notice of motion and a heading in their supporting brief indicate they move to dismiss plaintiff's fifth claim for unfair business practices for failure to state a claim. (See ECF No. 14 at 2, 24) However, the substance of the argument addresses the statute of limitations (Id. at 24).

knowledge of the "facts constituting his cause of action" despite his due diligence. <u>Grimmett</u>, 75 F.3d at 514. If the party "had available all the facts necessary to discover [the] cause of action with due diligence[,]" the limitations period does not toll simply because the party remained ignorant of the cause of action. <u>Id.</u> at 515.

"To plead fraudulent concealment, the plaintiff must allege that: (1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have 'actual or constructive knowledge of the facts giving rise to its claim'; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim." <u>In re Animation Workers Antitrust Litig.</u>, 123 F. Supp. 3d 1175, 1194 (N.D. Cal. 2015) (quoting <u>Hexcel</u>, 681 F.3d at 1060). A plaintiff "must plead with particularity the circumstances of the concealment and the facts supporting its due diligence." <u>Conmar Corp. v. Mitsui & Co. (U.S.A.)</u>, 858 F.2d 499, 502 (9th Cir. 1988); <u>see also</u> Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). To satisfy this standard, a "complaint must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." <u>Salameh v. Tarsadia Hotel</u>, 726 F.3d 1124, 1133 (9th Cir. 2013) (quotation marks and citation omitted); <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 764 (9th Cir. 2007) ("Federal Rule of Civil Procedure 9(b) requires… an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" (citation omitted)).

Plaintiff argues the following sufficed to plead defendants' affirmative acts to mislead the plaintiff: (1) he alleged in ¶¶ 31, 79, and 101 of the complaint that in or about June of 2018, defendant Wigginton told him over the telephone that easement access existed and would ensure plaintiff obtained access; (2) in ¶ 33, he alleged Lori Murphy, employee of CCL, falsely advised plaintiff on or around July 11, 2018, that the easement access was a public road; (3) in ¶ 94, he alleged both defendants, through Lori Murphy on or around August 13, 2020, sent an email stating there was "no [ ] problem accessing and using the lot…." (ECF No. 16 at 21.)

////

The allegations in ¶ 31, as to the date, and in ¶¶ 33, 79, and 101, as to manner of the communication, could be set forth with even greater particularity, and should be set forth with more particularity to the extent possible in any amended complaint. Nevertheless, the undersigned finds the current allegations suffice to "give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Swartz, 476 F.3d at 764; see also Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993) ("A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." (internal quotation marks and citation omitted)); Silving v. Wells Fargo Bank, NA, 800 F. Supp. 2d 1055, 1074 (D. Ariz. 2011) ("Although time, place, and exact excerpts may not always be necessary, Plaintiffs are required to plead what they know with enough specificity.").

Defendants argue -- and plaintiff concedes -- the complaint does not allege each of the specific statements listed in the paragraph above was known to be false and made for the purpose of misleading plaintiff. (See ECF No. 16 at 21.) Plaintiff offers to add such an allegation through amendment, if necessary. (Id.) However, the complaint alleges the defendants knew the Subject Property had no easement access and worked together to cause plaintiff to believe otherwise. (ECF No. 1, ¶¶ 114, 115.) Knowledge and intent may be alleged generally. See Fed. R. Civ. P. 9(b). Thus, the complaint adequately pleads defendants' affirmative acts to mislead plaintiff in support of their alleged fraudulent concealment of the civil RICO claim.

The complaint also sufficiently pleads that plaintiff did not have actual or constructive knowledge of the facts giving rise to his claim. Under the complaint's allegations, the county plat map shows an easement that traverses the parcels between Chicken Ranch Road and the Subject Property. (ECF No. 1, ¶ 35.) The contract between plaintiff and OLS states the land conveyed comes with all existing easements, whether recorded or not. (Id., ¶ 36.) The defendants and others allegedly represented to plaintiff that the property had easement access. Viewing the allegations in a light favorable to plaintiff, the lack of easement access could not have been discovered by a reasonable person because defendants were the ones who possessed that information. Notably,

8

defendants do not identify any reasonably diligent conduct that, if taken by plaintiff, would have led to discovery of the cause of action.

The complaint also adequately pleads facts that plaintiff acted diligently in trying to uncover the facts giving rise to his claim. Diligent inquiry is required "when facts exist that would excite the inquiry of a reasonable person." Conmar, 858 F.2d at 504. Plaintiff discovered a locked gate barring easement access to the Subject Property on or before June 2018. (ECF No. 1, ¶ 21.) Plaintiff requested access to the easement but was denied because his name was not on the deed. (Id., ¶ 24.) Plaintiff attempted to inquire at the County Recorder's Office about easement access, at which time he learned of Ms. Ford's contract-for-deed with defendant Wigginton. (Id., ¶ 25.) In or about June 2018, plaintiff called defendant Wigginton to ask about easement access. (Id., ¶¶ 31, 101.) Plaintiff also sent email correspondence asking about easement access to the OLS defendants. (Id., ¶ 32.) Although some of plaintiff's actions constituting reasonable diligence could have been pleaded with greater specificity as to timing, the undersigned finds the complaint adequately pleads fraudulent concealment of the civil RICO claim. Thus, the undersigned recommends the motion to dismiss be denied on the asserted statute of limitations ground as to the civil RICO claim.

## B.   Intentional misrepresentation and fraudulent concealment (Second and Third Causes of Action)

The statute of limitations applicable to plaintiff's second and third causes of action for fraud—intentional misrepresentation and fraudulent concealment, respectively—is three years. See Cal. Civ. Proc. Code § 338(d) (the statute of limitations is three years for "[a]n action for relief on the ground of fraud or mistake"). "The cause of action… is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." (Id.)

> The courts interpret discovery in [the context of Cal. Civ. Proc. Code § 338(d)] to mean not when the plaintiff became aware of the specific wrong alleged, but when the plaintiff suspected or should have suspected that an injury was caused by wrongdoing. The statute of limitations begins to run when the plaintiff has information which would put a reasonable person on inquiry. A plaintiff need not be aware of the specific facts necessary to establish a claim since they can be developed in pretrial discovery.

1   Kline v. Turner, 87 Cal. App. 4th 1369, 1374 (2001) (citing Jolly v. Eli Lilly & Co. 44 Cal.3d

2   1103, 1110-11 (1988)). "Under this rule constructive and presumed notice or knowledge are

3   equivalent to knowledge." Parsons v. Tickner, 31 Cal. App. 4th 1513, 1525 (1995).

4        The CCL defendants argue plaintiff admitted he first learned of the nature of the

5   easements and the general accessibility of the property in or around June 2018, but filed suit in

6   January 2023. (ECF No. 14-1 at 19.) Defendants also argue plaintiff had constructive knowledge

7   of his alleged inability to access the property in June 2018. (ECF No. 17 at 4.)

8        Plaintiff argues he adequately invoked the delayed discovery exception to the statute of

9   limitations. (ECF No. 16 at 10-12.) Plaintiff argues the facts clearly outline that he was prevented

10  from discovering the true nature of access issues by the four defendants acting together. (Id. at

11  10.)

12       To adequately allege the delayed discovery exception applies, a plaintiff must allege "(1)

13  the time and manner of discovery *and* (2) the inability to have made earlier discovery despite

14  reasonable diligence." Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 808 (2005) (citation

15  omitted) (emphasis in original). The discovery rule "postpones accrual of a cause of action until

16  the plaintiff discovers, or has reason to discover, the cause of action." WA Southwest 2, LLC v.

17  First Am. Title Ins. Co., 240 Cal. App. 4th 148, 156 (2015) (quoting Fox, 35 Cal. 4th at 807). "A

18  plaintiff has reason to discover a cause of action when he or she has reason to at least suspect a

19  factual basis for its elements." Fox, 35 Cal. 4th at 807 (internal quotation marks and citation

20  omitted). "The discovery rule only delays accrual until the plaintiff has, or should have, inquiry

21  notice of the cause of action." Fox, 35 Cal. 4th at 807.

22       Plaintiff has not adequately pleaded the delayed discovery exception to the statute of

23  limitations because the complaint alleges only general facts for the first prong of the test

24  regarding the time and manner of discovery. (See ECF No. 1, ¶¶ 47, 49.) Under the complaint's

25  allegations, plaintiff apparently received the deed sometime after July 17, 2021, and allegedly

26  discovered the truth sometime after that. (See id., ¶ 47.) Plaintiff does not meet his burden to

27  plead specific facts to show the time and manner of discovery. See Yumul v. Smart Balance, Inc.,

28  733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010) ("A plaintiff whose complaint shows on its face that

1  his claim would be barred without the benefit of the discovery rule must specifically plead facts

2  to show [ ] the time and manner of discovery…" (quoting E–Fab, Inc. v. Accountants, Inc.

3  Services, 153 Cal.App.4th 1308, 1319 (2007)).

4      Plaintiff had information that would put a reasonable person on inquiry in June of 2018

5  and filed suit in January 2023. The complaint's current allegations fail to adequately invoke the

6  delayed discovery exception to the statute of limitations for the second and third causes of action.

7  Thus, the undersigned recommends the motion to dismiss be granted on the asserted statute of

8  limitations grounds as to the second and third causes of action.

9              **C.      Conversion (Fourth Cause of Action)**

10      The statute of limitations is also three years for "[a]n action for taking, detaining, or

11  injuring goods or chattels[.]" Cal. Civ. Proc. Code § 338(c)(1). The statute of limitations period

12  commences upon "the act of wrongfully taking property." Murphy v. Am. Gen. Life Ins. Co., 74

13  F. Supp. 3d 1267, 1279 (C.D. Cal. 2015) (quoting AmerUS Life Ins. Co. v. Bank of Am., N.M.,

14  143 Cal.App.4th 631, 639 (2nd Dist. 2006), as modified Oct. 30, 2006.

15      Defendants argue Maye's conversion claim accrued at the time of the first payment to

16  OLS because plaintiff was unable to access the property at that time. (ECF No. 14-1 at 24.)

17  Plaintiff counters "the payoff happened in May 2021," and defendant Wigginton was paid in

18  August 2021, such that the limitation period did not expire as to the moving defendants until May

19  2024 at the earliest.[3] (ECF No. 16 at 13.) Neither party cites authority for their position on the

20  date of accrual beyond the fact that limitations period commences upon the act of wrongfully

21  taking property.

22      As set forth below, plaintiff has not pleaded a plausible conversion claim. Pertinent to the

23  statute of limitations issue, it is not clear under the complaint's allegations when the moving

24  defendants committed the act of wrongfully taking plaintiff's money. Accordingly, the

25  undersigned will recommend the motion to dismiss be denied on the asserted statute of limitations

26

---

27  [3] Plaintiff also asserts the statute "includes a provision for commencement of the statute of limitations based upon delayed discovery." (ECF No. 16 at 12.) As set forth, though, the complaint does not adequately invoke California's delayed discovery exception to the statute of limitations.

28

ground as to the conversion claim and granted for failure to state a claim for the reasons set forth below.

### D.  Unfair Business Practices (Fifth Cause of Action)

California unfair competition claims are subject to a four-year statute of limitations period. Aryeh v. Canon Bus. Solutions, Inc., 55 Cal. 4th 1185, 1196 (2013); Cal. Bus. & Prof. Code § 17208. The date of accrual of an unfair competition claim is subject to equitable exceptions and modifications. See Aryeh, 55 Cal. 4th at 1196 (stating nonstatutory exceptions to the basic limitations period apply); Baja Ins. Servs., Inc. v. Shanze Enterprises, Inc., No. 2:14-CV-02423-KJM-AC, 2016 WL 1267999, at *6-7 (E.D. Cal. Mar. 31, 2016) (citing Aryeh to hold "an unfair competition claim is subject to a number of equitable exceptions and modifications, such as the discovery rule, equitable tolling, fraudulent concealment, the continuing violation doctrine, and the theory of continuous accrual").

Defendants bear the initial burden of proving plaintiff's unfair competition claim is barred by section 17208's four-year limitations period. See Aryeh, 55 Cal. 4th at 1197. Thereafter, the burden shifts to plaintiff to demonstrate his claim survives based on one or more common law exceptions to the basic date of accrual. See id. "That burden may be imposed even at the pleading stage." Id.

Defendants argue the limitation period for their alleged unfair business practices began to run on the date the cause of action accrued, not on the date of discovery. (ECF No. 14-1 at 25.) Defendants argue the limitations period began to run when plaintiff contracted with OLS in February 2018. (ECF No. 14-1 at 24-25.)

Plaintiff argues defendants' authority that the limitations period begins to run on the date of accrual, and not on the date of discovery, was disapproved by the California Supreme Court in Aryeh, 55 Cal.4th at 1194, n.4. (ECF No. 16 at 13-14.) Plaintiff argues his initial ability to access the property was "predicated on his ownership interest, not on the true lack of physical access." (Id. at 14.)

Defendants have not met their initial burden of demonstrating plaintiff's unfair competition claim is time-barred based on the alleged start of their unfair business practices in

1  February 2018. See Aryeh, 55 Cal. 4th at 1196 (rejecting cases holding the limitations period

2  necessarily begins to run on the date of accrual and holding "the common law last element

3  accrual rule is the default"). Accordingly, based on Aryeh, 55 Cal. 4th at 1196, undersigned

4  recommends the motion to dismiss be denied on the statute of limitations ground as to the fifth

5  cause of action for unfair business practices.

6       **II.     Adequacy of the Complaint's Allegations**

7            **A.     RICO (First Cause of Action)**

8       The elements of a civil RICO claim are as follows: "(1) conduct (2) of an enterprise (3)

9  through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to the

10  plaintiff's 'business or property.'" Grimmett, 75 F.3d at 510 (citing 18 U.S.C. §§ 1964(c),

11  1962(c)). Each of the four elements is discussed further below. The moving defendants argue

12  plaintiff failed to adequately allege each element.

13                 **1.     Enterprise**

14       "Section 1961(4) describes two categories of associations that come within the purview

15  of the 'enterprise' definition. The first encompasses organizations such as corporations and

16  partnerships, and other 'legal entities.' The second covers 'any union or group of individuals

17  associated in fact although not a legal entity.'" United States v. Turkette, 452 U.S. 576, 581-82

18  (1981) (citing 18 U.S.C. § 1961(4)). The "enterprise," 18 U.S.C. § 1962(c), must be a distinct

19  entity from a defendant, "not simply the same 'person' referred to by a different name." Cedric

20  Kushner Promotions, Ltd. v. King, 533 U.S. 158 (2001).

21       An "association-in-fact enterprise is 'a group of persons associated together for a common

22  purpose of engaging in a course of conduct.'" Boyle v. U.S., 556 U.S. 938, 946 (2009). "Such an

23  enterprise ... is proved by evidence of an ongoing organization, formal or informal, and by

24  evidence that the various associates function as a continuing unit." Id. at 945. "[A]n association-

25  in-fact enterprise must have at least three structural features: a purpose, relationships among those

26  associated with the enterprise, and longevity sufficient to permit these associates to pursue the

27  enterprise's purpose." Id.

28  ////

### 2.      Conduct

In order to have RICO liability, the defendant must "conduct or participate, directly or indirectly, in the conduct of [the] enterprise's affairs." 18 U.S.C. § 1962(c); see Reves v. Ernst & Young, 507 U.S. 170, 179 (1993) ("one must have some part in directing [the enterprise's] affairs"). RICO liability attaches only to "those who participate in the operation or management of an enterprise through a pattern of racketeering activity." Reves, 507 U.S. at 184. Liability "depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." Cedric Kushner Promotions, Ltd., 533 U.S. at 163.

### 3.      Racketeering

Racketeering activity requires commission of one of the predicate acts enumerated in 18 U.S.C. § 1961(1). In this case, the predicate acts are alleged to be mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. "The mail and wire fraud statutes are identical except for the particular method used to disseminate the fraud, and contain three elements: (A) the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud." Eclectic Properties E., LLC v. Marcus & Millichap Co., 751 F.3d 990, 997 (9th Cir. 2014).

### 4.      Pattern

A "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). A pattern requires the showing of a relationship between the predicates, and the threat of continuing activity rather than sporadic activity. H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989).

### 5.      Discussion of the RICO Elements

Defendants argue the complaint fails to sufficiently allege the CCL defendants were participants in any enterprise. (ECF No. 14-1 at 12-14.) Defendants argue the complaint is devoid of any non-conclusory allegations supporting an enterprise, as opposed to non-actionable business

14

1  relationships. (Id. at 13.) They argue plaintiff has merely alleged routine business

2  communications and conduct in the defendants' own affairs. (Id. at 11-12.) Defendants argue a

3  "single episode" containing multiple predicate acts cannot sustain a RICO claim. (Id. at 15.)

4  Defendants argue plaintiff has not pleaded sufficient predicate acts or the specific intent to

5  defraud with each predicate act. (Id. at 16.) Defendants also argue plaintiff lacks standing. (Id. at

6  17-19.)

7       As to conduct of an enterprise, plaintiff responds that he has adequately pleaded that

8  defendants worked together to get him to pay for a piece of property without access, promising

9  him access upon payment to induce him to pay. (ECF No. 16 at 16.) Plaintiff argues the

10  complaint sufficiently pleads fraud, which cannot be classified as part of defendants' routine

11  business acts. (Id. at 16-17.) Similarly, plaintiff argues he has adequately pleaded the existence of

12  an enterprise because he alleged the parties worked together to get plaintiff to pay for a piece of

13  property with no access, and because the allegations identified specific actions taken by the

14  defendants that cannot be classified as usual business transactions. (Id. at 16-17.) While not

15  conceding the complaint does not adequately plead a pattern of racketeering and sufficient

16  predicate acts, plaintiff's argument merely concludes these elements are satisfied and asks for

17  leave to amend. (Id. at 17.)

18       The court should reject a pleading strategy that attempts to transform a standard fraud

19  claim into a RICO claim. See, e.g., Gomez v. Guthy-Renker, LLC, No. EDCV14-01425-JGB-

20  KKX, 2015 WL 4270042, at *9 (C.D. Cal. July 13, 2015) (noting widespread consensus among

21  courts that routine business relationships are insufficient to impose RICO liability, even if there

22  have been varying opinions as to which particular RICO requirement fails under such

23  circumstances). Merely identifying actions defendants took that plaintiff alleges were fraudulent,

24  and therefore not within defendants' usual business transactions, does not suffice to state a claim.

25  See Shaw v. Nissan N. Am., Inc., 220 F. Supp. 3d 1046, 1056 (C.D. Cal. 2016) (conclusory

26  allegations that defendants "shared a common fraudulent purpose" in taking certain actions did

27  not satisfy the common purpose requirement and failed to suggest more than ordinary business

28  activity); In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab.

15

1    Litig., 826 F. Supp. 2d 1180, 1202-03 (C.D. Cal. 2011) (no claim stated because "the SAC alleges

2    no more than that Defendants' primary business activity… was conducted fraudulently").

3        The complaint's allegations also fail to show how "the defendants conducted or

4    participated in the conduct of the 'enterprise's affairs,' not just their own affairs." Cedric Kushner

5    Promotions, Ltd., 533 U.S. at 163. Conclusory allegations of common purpose do not suffice to

6    state a claim. Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp., 235 F. Supp. 3d

7    1132, 1174-75 (E.D. Cal. 2017).

8        In addition, plaintiff has not pleaded adequate facts that show a RICO enterprise with a

9    cohesive structure, as necessary to allege an enterprise and pattern of racketeering activity. See

10   Comm. to Protect our Agric. Water, 235 F. Supp. 3d at 1176. The complaint does not contain

11   factual allegations explaining the structure of the alleged enterprise.

12       Moreover, allegations of isolated incidents do not suffice to meet the "continuing unit"

13   requirement. See Comm. to Protect our Agric. Water, 235 F. Supp. 3d at 1176; Sever v. Alaska

14   Pulp Corp., 978 F.2d 1529, 1535 (9th Cir. 1992). "RICO's continuity requirement is not satisfied

15   if plaintiffs have merely alleged a single fraud perpetrated on a single victim." United Energy

16   Owners Comm., Inc. v. U.S. Energy Mgmt. Sys., Inc., 837 F.2d 356, 360 (9th Cir. 1988). A

17   plaintiff must allege "two or more RICO predicate acts, occurring over a significant period of

18   time, evidencing a threat of continuing activity." Id. at 361; see also Palantir Techs. Inc. v.

19   Abramowitz, No. 19-CV-06879-BLF, 2021 WL 2400979, at *7 (N.D. Cal. June 11, 2021) ("the

20   Ninth Circuit rarely upholds a finding of continuity where there is only a single victim") (citing

21   Sever, 978 F.2d at 1535 (affirming dismissal of RICO claim because collective conduct was "a

22   single episode" rather than a "series of separate, related acts") and Schreiber Distrib. Co. v. Serv-

23   Well Furniture Co., 806 F.2d 1393, 1399 (9th Cir. 1986) (affirming dismissal of RICO claims

24   where "complaint alleged the fraudulent diversion of a single shipment," thus it was an isolated

25   event and did not have threat of continuing activity) (further citations omitted)).

26       Here, defendants argue the only other possible victim of the scheme alleged could be

27   Johnetta Ford. (See ECF No. 14-1 at 15.) The complaint alleges Ms. Ford signed a contract for

28   deed and was unable to meet its alleged high-interest payment plan twice, causing her to default

on her mortgage. (ECF No. 1, ¶ 29.) The complaint does not allege defendants perpetrated the same scheme against plaintiff and Ms. Ford. Plaintiff's opposition to the motion to dismiss also does not identify how the complaint's allegations evidence a threat of continuing activity to show a pattern of racketeering by the moving defendants. (See ECF No. 16 at 17.)

Setting aside the conclusory allegations, the complaint pleads routine business activities alleged to have been undertaken fraudulently against plaintiff as a single victim. However, "RICO was not meant to address discrete instances of fraud[.]" Bryant v. Mattel, 573 F.Supp.2d 1254, 1263 (C.D. Cal. 2007). The complaint fails to sufficiently allege a RICO enterprise with a common purpose and a cohesive structure. The complaint does not contain sufficient factual matter to state a plausible claim to relief under RICO.[4]

### B.   Intentional Misrepresentation (Second Cause of Action)

To establish a claim for deceit based on intentional misrepresentation, a plaintiff must prove seven essential elements:

> (1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant'--s representation was a substantial factor in causing that harm to the plaintiff.

Manderville v. PCG&S Grp., Inc., 146 Cal. App. 4th 1486, 1498 (2007) (footnote omitted).

The parties dispute whether plaintiff has adequately alleged the element of reasonable or justifiable reliance. "Reliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable

---

[4] Because the complaint does not state a plausible RICO claim for relief, the court need not address whether plaintiff has standing under 18 U.S.C. § 1964(c), which is an issue requiring analysis of the specific RICO violations alleged. See Canyon Cnty. v. Syngenta Seeds, Inc., 519 F.3d 969, 972 (9th Cir. 2008) ("To have standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation.").

1   probability, have entered into the contract or other transaction." All. Mortg. Co. v. Rothwell, 10

2   Cal. 4th 1226, 1239 (1995). "Except in the rare case where the undisputed facts leave no room for

3   a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a

4   question of fact." Id. (citations omitted). "[W]hether a party's reliance was justified may be

5   decided as a matter of law if reasonable minds can come to only one conclusion based on the

6   facts." Id. (citation omitted).

7    Defendants argue the complaint fails to show plaintiff's justifiable reliance on any of their

8   representations to Maye because their alleged misrepresentations did not prompt Maye's

9   immediate action. (ECF No. 14-1 at 19-21.) Defendants note their alleged statements occurred

10   after Maye had purchased the property. (Id. at 20.) In addition, defendants argue, their statements

11   occurred in June 2018, July 2018, and August 2020, and thus were not the "immediate cause" of

12   Maye's decision to pay off the contract for deed in May 2021. (Id. at 21.) Citing ¶¶ 45 and 46 of

13   the complaint, defendants argue plaintiff would have paid off the property regardless of their

14   alleged statements because the complaint alleges plaintiff relied on OLS's representations and the

15   contract with OLS. (ECF No. 17 at 7-8.)

16    Plaintiff points out the authority relied upon by defendants does not define "immediate" in

17   the way they construe it, or at all. (ECF No. 16 at 20.) Plaintiff argues he pleaded in ¶ 46 that he

18   paid off the property in or about May 2021 and did so "in an effort to gain the access he had been

19   promised." (Id.)

20    Defendants do not provide any authority that defines "immediate cause" for reliance. The

21   Judicial Council of California's jury instruction for intentional misrepresentation does not include

22   the "immediate cause" language or require proof of "immediate" timing. See CACI No. 1900.

23   Justifiable reliance is normally a question of fact for a jury, and this is not one of the "rare cases"

24   in which there is only one conclusion that reasonable minds could reach based on the allegations

25   in the complaint. See All. Mortg. Co., 10 Cal.4th at 1239. Thus, the complaint adequately pleads

26   the elements for an intentional misrepresentation fraud claim in the second cause of action.

27   ////

28   ////

1            **C.**     **Fraudulent Concealment (Third Cause of Action)**

2          The elements of a fraudulent concealment claim are as follows: "(1) the defendant

3 concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to

4 the plaintiff; (3) the defendant intentionally concealed or suppressed the fact with the intent to

5 defraud the plaintiff; (4) the plaintiff was unaware of the fact and would not have acted as he did

6 if he had known of the concealed or suppressed fact; and (5) as a result of the concealment or

7 suppression of the fact, the plaintiff sustained damage." Burch v. CertainTeed Corporation, 34

8 Cal. App. 5th 341, 348 (2019).

9          The moving defendants argue the complaint merely alleges they made incorrect

10 statements to plaintiff and lacks allegations they suppressed material facts regarding access. (ECF

11 No. 14-1 at 23.) As set forth above, however, knowledge and intent for fraud "may be alleged

12 generally." Fed. R. Civ. P. 9(b). The complaint's allegations suffice on the element of intentional

13 concealment.

14          Defendants also argue the claim for fraudulent concealment fails because they had no

15 duty to disclose any details about the Subject Property to plaintiff. (ECF No. 14-1 at 21-23.)

16 Plaintiff responds that active concealment exists where a party who is under no duty to speak

17 does so and makes misleading statements or suppresses material facts. (ECF No. 16 at 21.) See

18 Vega v. Jones, Day, Reavis & Pogue, 121 Cal. App. 4th 282, 294 (2004) (rejecting argument that

19 fraud based on nondisclosure always requires an "independent duty of disclosure" and citing

20 collected cases); Valencia v. Merck & Co., No. 1:07-CV-00388-OWW-GSA, 2009 WL 3365848,

21 at *5 (E.D. Cal. Oct. 16, 2009) (applying Vega to reject requirement of a special relationship for a

22 fraud claim on the ground that one who volunteers information must be truthful).

23          Defendants reply that the fraudulent concealment claim cannot withstand dismissal in the

24 absence of a special relationship. (ECF No. 17 at 8.) They argue the cases cited in plaintiffs'

25 opposition, including Vega, 121 Cal. App. 4th 282, and Valencia, 2009 WL 3365848, are

26 factually distinguishable from this litigation. (Id.)

27          "California law generally recognizes four forms of deceit: intentional misrepresentation,

28 negligent misrepresentation, concealment, and failure to perform a promise." Finch Aerospace

Corp. v. City of San Diego, 8 Cal. App. 5th 1248, 1252 (2017). "To maintain a cause of action for fraud through nondisclosure or concealment of facts, there *must* be allegations demonstrating that the defendant was under a legal duty to disclose those facts." Immobiliare, LLC v. Westcor Land Title Ins. Co., 424 F. Supp. 3d 882, 888 (E.D. Cal. 2019) (emphasis in original) (quoting Los Angeles Memorial Coliseum Com. v. Insomniac, Inc., 233 Cal. App. 4th 803, 831 (2015).

As set forth above, in Vega, the California Supreme Court held a fraud claim could be based on nondisclosure without an independent duty to disclose. See 121 Cal. App. 4th at 287. However, plaintiff's argument based on Vega would support his fraud claim based on intentional misrepresentation, but not his fraud claim based on concealment. See Immobiliare, 424 F. Supp. 3d at 889-90 ("While a claim for fraudulent concealment requires a duty to disclose, a claim for affirmative misrepresentation does not."); Elizabeth M. Byrnes, Inc. v. Fountainhead Com. Cap., LLC, No. CV-20-04149-DDP-RAO-X, 2021 WL 3501518, at *2, n. 2 (C.D. Cal. Aug. 6, 2021) (requiring special duty to be alleged where the complaint alleged "only fraudulent concealment, not an affirmative misrepresentation").

"Where 'a sufficient relationship or transaction does not exist, no duty to disclose arises even when the defendant speaks.'" W. Pac. Elec. Co. Corp. v. Dragados/Flatiron, 534 F. Supp. 3d 1209, 1247-48 (E.D. Cal. 2021) (quoting Bigler-Engler v. Breg, Inc., 7 Cal. App. 5th 276, 312 (2017). "A sufficient relationship has been found 'when the defendant is in a fiduciary relationship with the plaintiff,' or when it is 'a result of some sort of transaction between the parties,' e.g., 'between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement.'" W. Pac. Elec. Co. Corp., 534 F. Supp. 3d at 1247-48 (quoting LiMandri v. Judkins, 52 Cal. App. 4th 326, 336-37 (1997)).

Plaintiff has not alleged the existence of any kind of transactional or other relationship between himself and the moving defendants. The moving defendants did not owe plaintiff a duty of disclosure, and his fraudulent concealment claim fails. See W. Pac. Elec. Co. Corp. v. Dragados/Flatiron, 534 F. Supp. 3d at 1247-48; Bigler-Engler, 7 Cal. App. 5th at 312.

////

////

1          **D.     Conversion (Fourth Cause of Action)**

2          Defendants argue the conversion claim contains only threadbare allegations and legal

3   conclusions that all defendants shared in the money and refused to return eighty percent of

4   Maye's money, and that Maye "did not consent to the taking of his money and opportunity by

5   deceit[.]" (ECF No. 14-1 at 23.) Defendants argue the allegation they shared in the money is

6   insufficient to state a plausible claim. (Id. at 24.) Defendants argue that because they were not in

7   contractual privity with Maye, it is implausible they refused to return his money. (Id. at 24.)

8          Plaintiff argues the complaint incorporated all allegations into the cause of action and that

9   defendants' sharing of the money is a factual assertion rather than a conclusion. (ECF No. 16 at

10   22.) He argues he alleged defendants stated they would provide the requisite access if he paid off

11   the land, suggesting they were receiving the money. (Id.) Plaintiff argues he was in contractual

12   privity with the moving defendants for an implied contract concerning "early payoff for access

13   provided by moving defendants." (Id. at 23.)

14          Defendants reply that plaintiff did not plead a contract with the moving defendants. (ECF

15   No. 17 at 9.) Moreover, defendants argue, by characterizing Lori Murphy as a mere employee, the

16   complaint arguably acknowledges that Lori Murphy does not have the authority to contract on the

17   moving defendants' behalf. (Id. at 10.)

18          "Conversion is the wrongful exercise of dominion over the property of another. The

19   elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the

20   property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and

21   (3) damages." Lee v. Hanley, 61 Cal. 4th 1225, 1240 (Cal. 2015) (quoting Welco Elecs., Inc. v.

22   Mora, 223 Cal.App.4th 202, 208 (Cal. Ct. App. 2014)). Except to state the basic elements of a

23   conversion claim, neither party cites any further authority on the elements as applied to the facts

24   of this case.

25          At the outset, whether plaintiff pleaded an implied contract with the moving defendants to

26   support the conversion claim does not determine the issue, because "[a] plaintiff may not

27   ordinarily recover for the tort of conversion for the breach of duties that merely restate contractual

28   obligations." Nguyen v. Stephens Inst., 529 F. Supp. 3d 1047, 1058 (N.D. Cal. 2021) (citing Aas

21

1   v. Superior Court, 24 Cal. 4th 627, 643 (2000)); Beluca Ventures LLC v. Aktiebolag, 622 F.

2   Supp. 3d 806, 814 (N.D. Cal. 2022). Moreover, defendants' alleged refusal to refund plaintiff's

3   money cannot itself be the basis for the conversion. See Welco Elecs., Inc., 223 Cal. App. 4th at

4   214 ("a simple failure to pay money owed does not constitute conversion"); Haas v. Travelex Ins.

5   Servs. Inc., 555 F. Supp. 3d 970, 983 (C.D. Cal. 2021) ("the conversion claim fails because

6   Haas's claim amounts to no more than one for reimbursement of a payment").

7           Nevertheless, money can sometimes be the subject of conversion "if the claim involves a

8   specific, identifiable sum[.]" Welco Elecs., Inc., 223 Cal. App. 4th at 209 (citing Haigler v.

9   Donnelly, 18 Cal.2d 674, 681 (1941)). In Welco Elecs., Inc., the court held the use of the

10  plaintiff's credit card on the defendant's credit card terminal to improperly transfer specific sums

11  of money to defendant's bank account was a conversion. 223 Cal. App. 4th at 205. In addition, "a

12  conversion claim does not require that a specific lump sum of money be entrusted to defendant;

13  the plaintiff must merely prove a specific, identifiable sum of money that was taken from it." Id.

14  at 216. However, Welco involved an unauthorized transfer of money, see id. at 208-09, and the

15  factual allegations of this case are quite different.

16          Under the complaint's allegations and plaintiff's argument, the moving CCL defendants

17  induced plaintiff to make payments to the OLS defendants by their alleged fraudulent statements.

18  Because the wrongful acts alleged here are predicated in fraud, this claim is subject to heightened

19  pleading requirements. See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003).

20  If a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course

21  of conduct as the basis of a claim…, the claim is said to be "grounded in fraud" or to "sound in

22  fraud," and the pleading of that claim as a whole must satisfy the particularity requirement of

23  Rule 9(b)." Id. at 1103-04.

24          The complaint's conversion allegations grounded in fraud do not meet Rule 9(b)'s

25  heightened pleading standard. Plaintiff has not sufficiently alleged an ownership interest in or

26  right to possess his money at the time of the conversion. It is also not clear how the CCL

27  defendants' wrongfully exercised dominion over plaintiff's property. Finally, the acts that

28  allegedly constituted the conversion are not adequately pleaded, including when they took place.

California "cases recognizing claims for the conversion of money 'typically involve those who have misappropriated, commingled, or misapplied specific funds held for the benefit of others.'" <u>Voris v. Lampert</u>, 7 Cal. 5th 1141, 1152 (2019) (citing collected cases) (quoting <u>PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP</u>, 150 Cal. App. 4th 384, 396 516 (2007)); <u>see also</u> <u>Beluca Ventures LLC v. Aktiebolag</u>, 622 F. Supp. 3d 806, 815 (N.D. Cal. 2022) (citing collected cases). Unlike a typical case involving conversion of money, plaintiff's conversion claim does not involve a person or entity, such as an attorney or real estate agent, holding funds for the benefit of the client. Moreover, plaintiff fails to identify allegations pleaded with the requisite particularity to support the conversion claim which is grounded in fraud. The complaint fails to state a plausible conversion claim against the moving defendants.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, defendants' motion to dismiss should be granted in part and denied in part. Plaintiff has requested leave to amend, which the undersigned recommends that request be granted. <u>See</u> Fed. R. Civ. P. 15(a); <u>Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Servs.</u>, 911 F.2d 242, 247 (9th Cir. 1990) (A district court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

In accordance with the above, IT IS RECOMMENDED as follows:

1.      Defendant's motion to dismiss be granted in part, as follows:

a.  As to the civil RICO claim, the first cause of action, denied on the asserted statute of limitations ground and granted for failure to state a claim;

b.  As to the intentional misrepresentation claim, the second cause of action, granted on the asserted statute of limitations ground and denied for failure to state a claim;

c.  As to the fraudulent concealment claim, the third cause of action, granted on the asserted statute of limitations ground and granted for failure to state a claim;

d.  As to the conversion claim, the fourth cause of action, denied on the asserted statute of limitations ground and granted for failure to state a claim;

////

23

1    e.  As to the unfair business practices, the fifth cause of action, denied on the

2  asserted statute of limitations ground.

3    2.    Plaintiff be granted leave to amend.

4    These findings and recommendations are submitted to the United States District Judge

5  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14)

6  days after being served with these findings and recommendations, any party may file written

7  objections with the court and serve a copy on all parties. Such a document should be captioned

8  "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

9  shall be served on all parties and filed with the court within fourteen (14) days after service of the

10  objections. The parties are advised that failure to file objections within the specified time may

11  waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir.

12  1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

13  Dated:  January 31, 2024

14  
CAROLYN K. DELANEY
15  UNITED STATES MAGISTRATE JUDGE

16  8
maye23cv173.mtd
17

18

19

20

21

22

23

24

25

26

27

28