1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    DIMITRI MAYE,                          No.  2:23-cv-00173-DAD-CKD

12              Plaintiff,

13         v.                                ORDER GRANTING IN PART AND
                                             DENYING IN PART DEFENDANTS
14    ONLINE LAND SALES, LLC, et al.,        WIGGINTON AND CLASSIC COUNTRY
                                             LAND, LLC'S MOTION TO DISMISS
15              Defendants.
                                             (Doc. No. 28)
16

17

18              This matter is before the court on the pending motion to dismiss filed on behalf of

19    defendants Scott Wigginton and Classic Country Land, LLC ("CCL") (collectively, the "moving

20    defendants").  (Doc. No. 28.)  On June 4, 2024, the moving defendants' motion was taken under

21    submission pursuant to Local Rule 230(g).  (Doc. No. 33.)  For the reasons explained below, the

22    court will grant in part and deny in part the pending motion.

23                                    **BACKGROUND**

24              On January 27, 2023, plaintiff Dimitri Maye filed this fraud action against defendants

25    Online Land Sales LLC ("OLS"), Brian Quilty (a managing member of OLS), CCL, and Scott

26    Wigginton (a managing member of CCL).  (Doc. No. 27.)  On May 8, 2023, the moving

27    defendants filed a motion to dismiss, which was referred to the assigned magistrate judge for the

28    issuance of findings and recommendations.  (Doc. Nos. 14, 18.)  On February 23, 2024, the

undersigned adopted the assigned magistrate judge's findings and recommendations recommending that the moving defendants' motion be granted in part and denied in part and granting plaintiff leave to amend.  (Doc. Nos. 20, 22.)  On April 15, 2024, plaintiff filed his operative first amended complaint ("FAC").  (Doc. No. 27.)  In his FAC, plaintiff alleges the following.

On February 28, 2018, plaintiff entered into a contract with defendant OLS to purchase a parcel of land located at Lot 34 Ravendale Ranch, Lassen County, California (the "Subject Property").  (*Id.* at ¶¶ 12, 15.)  Defendant OLS had a contract-for-deed agreement with defendant CCL for that parcel.  (*Id.* at ¶ 28.)  At the time of sale, unbeknownst to plaintiff, the title for the parcel of land indicated that defendant Wigginton was its owner.  (*Id.* at ¶¶ 25, 38.)  The advertisement for the lot indicated that plaintiff would have full rights to access the Subject Property once he entered into a contract for the deed.  (*Id.* at ¶ 18.)  In June 2018, plaintiff attempted to access the Subject Property, but discovered that it could only be accessed through an easement that consisted of a dirt trail off Chicken Ranch Road.  (*Id.* at ¶ 21.)  Plaintiff was not allowed to use the easement, because the third party who controlled access to the easement told him that his name was not on the deed to the lot.  (*Id.* at ¶ 24.)

In June 2018, plaintiff inquired at the County Recorder's Office as to both ownership of the Subject Property and easement access.  (*Id.* at ¶ 25.)  He was informed that a separate contract for the deed of that lot had been recorded on June 24, 2010 with defendant Wigginton.  (*Id.*)  After informing defendant OLS of this, defendant OLS provided plaintiff with a copy of the contract for the deed that it had with defendant CCL.  (*Id.* at ¶ 28.)  Plaintiff also contacted defendant Wigginton to ask if there was easement access to the lot, which defendant Wigginton assured him there was.  (*Id.* at ¶ 31.)  On July 11, 2018, defendant CCL communicated with plaintiff to inform him that the dirt road was not an easement but instead a public road.  (*Id.* at ¶ 33.)  In or about March 2019, plaintiff contacted defendants OLS and CCL to attempt to enter into a lease with defendant Wigginton who was listed as the owner of the lot.  (*Id.* at ¶ 38.)

On August 6, 2020, plaintiff again communicated with defendant OLS to attempt to enter into a lease agreement.  (Doc. No. 27 at ¶ 39.)  Defendant CCL communicated defendant

1    Wigginton's statement that if plaintiff paid off the property in full that he would ensure that

2    plaintiff had access to the lot.  (*Id.* at ¶ 41.)  In May 2021, plaintiff accepted this offer and paid

3    off the property in full.  (*Id.* at ¶ 49.)  On July 17, 2021, defendant Quilty signed a warranty deed

4    to transfer title of the property to plaintiff.  (*Id.* at ¶ 50.)  On August 2, 2021, defendant

5    Wigginton signed a deed transferring a deed to defendant OLS.  (*Id.*)  That deed was then

6    recorded and defendant OLS recorded a deed transferring the lot to plaintiff on August 16, 2021.

7    (*Id.*)  At that point, plaintiff took possession of the deed, attempted to access the property, but was

8    again denied access contrary to the representations made by the defendants that he would have a

9    right of access conferred by the deed.  (*Id.* at ¶ 52.)

10          On January 27, 2023, plaintiff filed the complaint initiating this action.  (Doc. No. 1.)  In

11   March 2023, defendant Wigginton represented to plaintiff that, though there were no easement

12   rights needed to use the easement from Chicken Ranch Road, that plaintiff had the right to use a

13   non-exclusive easement across multiple other parcels.  (Doc. No. 27 at ¶¶ 58, 59.)  Plaintiff

14   discovered that these alternative routes do not exist.  (*Id.* at ¶ 61.)

15          In his FAC, plaintiff asserts the following four claims against defendants Wigginton and

16   CCL:  (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18

17   U.S.C. §§ 1961, *et seq.*; (2) intentional misrepresentation in violation of California Civil Code

18   § 1710; (3) concealment in violation of California Civil Code § 1710; and (4) unfair business

19   practices in violation of California's Unfair Competition Law ("UCL"), California Business and

20   Professions Code §§ 17200, *et seq.*  (*Id.* at 15–36.)

21          On May 6, 2024, defendants Wigginton and CCL filed the pending motion to dismiss.

22   (Doc. No. 28.)  On May 20, 2024, plaintiff filed his opposition to that motion.  (Doc. No. 31.)  On

23   May 30, 2024, defendants filed their reply thereto.  (Doc. No. 32.)

24                                **LEGAL STANDARD**

25          The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

26   sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

27   1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

28   sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

                                         3

1  F.2d 696, 699 (9th Cir. 1988).  A plaintiff is required to allege "enough facts to state a claim to

2  relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

3  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

4  the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

5  *Iqbal*, 556 U.S. 662, 678 (2009).

6          In determining whether a complaint states a claim on which relief may be granted, the

7  court accepts as true the allegations in the complaint and construes the allegations in the light

8  most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v.*

9  *United States*, 915 F.2d 1242, 1245 (9th Cir. 1989), *abrogated on other grounds by DaVinci*

10 *Aircraft, Inc. v. United States*, 926 F.3d 1117 (9th Cir. 2019).  However, the court need not

11 assume the truth of legal conclusions cast in the form of factual allegations.  *U.S. ex rel. Chunie v.*

12 *Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed

13 factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me

14 accusation." *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and

15 conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S.

16 at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action,

17 supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to

18 assume that the plaintiff "can prove facts that it has not alleged or that the defendants have

19 violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal.,*

20 *Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

21                                          **ANALYSIS**

22 **A.       Plaintiff's RICO Claims**

23         The moving defendants argue that plaintiff's RICO claims should be dismissed because

24 plaintiff has failed to allege that his injuries were proximately caused by Wigginton and has failed

25 to allege that CCL participated in an enterprise, among other arguments.  (Doc. No. 28-1 at 11–

26 12.)  In his opposition, plaintiff states that he "does not contest the defendants' arguments as to

27 the RICO claim," that he will "not seek the opportunity to amend," and that "[h]ad defendants

28 /////

                                              4

1   actually engaged in a meet and confer process, they could have saved themselves and the Court

2   these arguments."  (Doc. No. 31 at 11.)

3       The court finds that there appears to be no disagreement between the parties.  The court

4   also broadly agrees with the moving defendants' argument that plaintiff's allegations are not

5   sufficient to state a RICO claim against defendant Wigginton, since plaintiff's allegations of

6   Wigginton's conduct occurred after plaintiff was already allegedly harmed, or against defendant

7   CCL, since plaintiff does not allege a common purpose distinct from ordinary affairs.  *See*

8   *Bellando-Roberts for Phyllis Miller Revocable Trust v. Cuesta Title Co.*, No. 10-cv-03402-R-

9   FFM, 2010 WL 11549718, at *1 (C.D. Cal. Nov. 29, 2010) (holding that predicate acts that occur

10  after the alleged injury cannot proximately cause the alleged injury); *Comm. to Protect Our*

11  *Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1173 (E.D. Cal. 2017)

12  (finding the plaintiffs' RICO claim was deficiently pled where the complaint contained no

13  "specific facts indicating that defendants acted with an objective unrelated to ordinary business or

14  government aims").  Accordingly, the court will grant the moving defendants' motion to dismiss

15  plaintiff's RICO claims.

16  **B.     Statute of Limitations**

17      The moving defendants next contend that plaintiff's second and third causes of action—

18  for intentional misrepresentation and fraudulent concealment—are partially barred by the

19  applicable three year statute of limitations.[1]  (Doc. No. 28-1 at 18); *see* Cal. Civ. Proc. Code

20  § 338(d).  Specifically, the moving defendants argue that, insofar as plaintiff's second and third

21  causes of action are based on alleged statements made in June 2018, those causes of action are

22  time-barred—though they are not time-barred as to the alleged statements made in August of

23  2021.  (Doc. No. 32 at 2.)  Plaintiff concedes that he brought this action more than three years

---

[1]  The moving defendants also contend in their reply brief that plaintiff's fourth cause of action
under the UCL is barred as to defendant Wigginton by the applicable statute of limitations.  (Doc.
No. 32 at 7.)  Specifically, they claim that defendant Wigginton is only alleged to have committed
one unfair business practice in June 2018.  (*Id.*)  Of course, "[t]he district court need not consider
arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir.
2007)).  Accordingly, the court declines to consider this argument which was raised for the first
time in defendants' reply.

after June 2018, which was when he first found a gate blocking access to the lot he had contracted

to purchase, but he argues that the statute of limitations did not commence running at that point

because his discovery of the fraudulent actions of defendants was delayed.  (Doc. No. 31 at 5.)

   "The statute of limitations begins to run when the plaintiff has information which would

put a reasonable person on inquiry."  *Kline v. Turner*, 87 Cal. App. 4th 1369, 1374 (2001).  "In

order to invoke [the delayed discovery exception] to the statute of limitations, the plaintiff must

specifically plead facts which show (1) the time and manner of discovery and (2) the inability to

have made earlier discovery despite reasonable diligence."  *Goldstein v. General Motors LLC*,

517 F. Supp. 3d 1076, 1091 (S.D. Cal. 2021) (citation omitted).  "The reasonableness of a delayed

discovery presents a question of law only 'when the evidence establishes beyond dispute that the

plaintiff has failed to bring the action within one year after notice of its existence.'"  *Timmel v.*

*Moss*, 803 F.2d 519, 522 (9th Cir. 1986) (citing *Graham v. Hansen*, 128 Cal. App. 3d 965, 972

(1982)) (applying a statute of limitations for medical malpractice actions that created a one-year

limit after discovery of cause of action).

   Here, the moving defendants argue that plaintiff has not alleged specific facts to show the

time and manner of discovery.  (Doc. No. 28-1 at 19.)  Plaintiff contends that the allegations in

his FAC do adequately describe his discovery of defendants' allegedly fraudulent actions,

including the time and manner of his discovery.  (Doc. No. 31 at 5–7.)  In reply, the moving

defendants advance a new argument that plaintiff should have been more diligent in discovering

that there were no easement rights to his property.  (Doc. No. 32 at 3–5.)

   The court concludes that plaintiff has adequately alleged the time and manner of his

discovery of his fraudulent concealment and intentional misrepresentation causes of action.

Plaintiff alleges that he did not receive the deed for the Subject Property until August 2021, that

he had expected easement language would be present in that deed because of representations

made to him by defendants, and that there was no easement language present in the deed.  (Doc.

Nos. 27 at ¶¶ 141–43, 31 at 5–6.)  He alleges further that he hired a surveyor in January 2022,

who then informed plaintiff that there was no way to access the land because plaintiff had no

easement rights.  (Doc. No. 27 at ¶ 147.)  Plaintiff also alleges that he emailed defendant OLS and

explained that he "just found out" that the Subject Property was landlocked in January 2022. (*Id.* at ¶ 148.)

Plaintiff also pleads facts supporting his inability to have made an earlier discovery of the fraudulent concealment and misrepresentations despite the exercise of reasonable diligence on his part. For instance, he alleges that in June 2018, he discovered that the easement to the Subject Property was blocked by a gate and was informed that, because his name was not on the deed, he could not access the easement. (*Id.* at ¶ 131.) He alleges that he reached out to defendants at that time, who had access to the deed, to confirm whether the Subject Property had easement access and that they had informed him that it did. (*Id.* at ¶¶ 132–34.) He also alleges that he had made efforts to inquire at the County Recorder's Office about easement access in 2018, but he instead discovered that a third party had a contract-for-deed contract recorded with the county. (*Id.* at ¶ 25.)

The court finds that considered together, these allegations support plaintiff's contention that, despite finding that the easement was blocked by a gate when visiting in June 2018, he did not suspect or discover the fraudulent concealment and intentional misrepresentation regarding the lack of easement access until August 2021, when he finally received the deed to the property. *See Greenfield MHP Assocs., L.P. v. Ametek, Inc.*, 145 F. Supp. 3d 1000, 1010–11 (S.D. Cal. 2015) ("[T]he statute of limitations only begins to run once the plaintiff has a suspicion of wrongdoing, that is, that someone has done something wrong to [him].") (internal quotation and citation omitted).

Further, the court is not persuaded by defendants' argument that, based on plaintiff's allegations, he reasonably should have suspected that he had been misled sooner. "At this stage of the litigation, [the court] must accept [plaintiff's] allegations as true." *Hishon*, 467 U.S. at 73 (1984). Plaintiff has explicitly alleged that he did not discover that the deed failed to contain easement rights to access the Subject Property until August 2021. (Doc. No. 27 at ¶ 143.) He has further alleged that the contract between himself and defendants contemplated the possibility of unrecorded easements. (Doc. No. 27 at ¶¶ 141–44, 180); *cf. Altman v. PNC Mortg.*, 850 F. Supp. 2d 1057, 1084–85 (E.D. Cal. 2012) (holding that the delayed discovery rule did not apply when

1   the plaintiffs did not allege that the defendants prevented them from discovering a cause of

2   action).  Whether plaintiff in fact had realized sooner contrary to his allegations, whether the

3   actions taken by plaintiff from 2018 to 2021 amount to reasonable diligence, and whether the

4   exercise of reasonable diligence would have resulted in the discovery of these causes of action are

5   all questions of fact, and are not questions for the court to decide at this stage of the litigation.

6   *Timmel*, 803 F.2d at 521; *accord Nev. Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1308 (9th Cir.

7   1992).

8          Accordingly, the court concludes that plaintiff has adequately alleged facts in support of

9   both requirements of a delayed discovery through the amendments made in his FAC.  Therefore,

10   plaintiff's claims brought against the moving defendants will not be dismissed as time-barred.

11   **C.     Fraudulent Concealment**

12          The moving defendants next argue that plaintiff's third cause of action for concealment

13   should be dismissed because he has not alleged any duty to disclose on the part of defendants.

14   (Doc. No. 28-1 at 15–16.)  "[A] fraud claim based on concealment is actionable only if there is a

15   duty to disclose."  *Kuehl v. Gen. Motors LLC*, No. 2:23-cv-06980-SB-SK, 2023 WL 8353784, at

16   *3 (C.D. Cal. Nov. 17, 2023).  In the assigned magistrate judge's findings and recommendations

17   addressing defendants' motion to dismiss plaintiff's original complaint, the magistrate judge

18   concluded that plaintiff had not "alleged the existence of any kind of transactional or other

19   relationship between himself and the moving defendants."  (Doc. No. 20 at 20.)  Plaintiff argues

20   that in his FAC he has now successfully alleged a duty to disclose by alleging that he was in

21   contractual privity with defendants CCL and Wigginton.  (Doc. No. 31 at 8.)

22          "Under California law, a duty to disclose may arise where:  (1) 'the defendant is the

23   plaintiff's fiduciary;' (2) 'the defendant has exclusive knowledge of material facts not known or

24   reasonably accessible to the plaintiff;' (3) 'the defendant actively conceals a material fact from

25   the plaintiff;' or (4) 'the defendant makes partial representations that are misleading because

26   some other material fact has not been disclosed.'"  *Anatov v. Gen. Motors LLC*, No. 8:23-cv-

27   01593-FWS-MJR, 2024 WL 217825, at *10 (C.D. Cal. Jan. 19, 2024) (quoting *Collins v.

28   eMachines, Inc.*, 202 Cal. App. 4th 249, 255–56 (2011)).  When a plaintiff seeks to establish a

1  duty to disclose where there is no fiduciary relation—under the latter three categories—then the

2  plaintiff must allege "a relationship that gives rise to the duty, such as seller and buyer, employer

3  and prospective employee, doctor and patient, or parties entering into any kind of contractual

4  arrangement." *Bigler-Engler v. Breg, Inc.*, 7 Cal. App. 5th 276, 311 (2017) (internal citations and

5  quotations omitted).  In his opposition brief, plaintiff contends that he has properly alleged the

6  existence of a contractual arrangement between him and defendants that gave rise to a duty to

7  disclose the material fact that the Subject Property did not have access by way of easement.

8  (Doc. No. 31 at 8.)

9          The moving defendants argue, with no elaboration, that "the FAC's allegations

10  specifically show that there was no 'transaction' between the parties because there was no

11  contractual privity between [CCL] and [plaintiff]."  (Doc. No. 28-1 at 20.)  In opposition, plaintiff

12  contends that, through amendment to his original complaint, he now sufficiently alleges the

13  existence of a contract in his FAC.  (Doc. No. 31 at 8.)  Specifically, plaintiff has added

14  allegations that the communication he received from defendant CCL (informing him that if he

15  paid off the Subject Property in full, defendant Wigginton would ensure he had access to the

16  property) constituted an offer, that he accepted that offer by paying off the amount due for the

17  land, and that this created a contractual relationship between himself, defendant Wigginton, and

18  defendant CCL.  (Doc. No. 27 at ¶¶ 41, 48, 162.)   In reply, the moving defendants argue that

19  plaintiff's allegations regarding contract formation are still deficient because he does not allege

20  sufficiently specific terms nor sufficient communication between himself and CCL.[2]

21          "The question of whether a complaint adequately alleges the existence of a contract is

22  governed by the pleading standards set forth in the Federal Rules of Civil Procedure and the cases

23

24  _____

[2]  The moving defendants also advance two new arguments in their reply.  First, that, should the
25  court find that the moving defendants had made an offer to plaintiff, the court should find that the
offer "had expired" due to the lapse in time before its acceptance.  (Doc. No. 32 at 6.)  Second,
26  that, should the court find that plaintiff has sufficiently pled a contractual agreement, the court
should find that this is not the type of transaction "contemplated by the jurisprudence on the duty
27  to disclose in concealment cases."  (Doc. No. 32 at 6–7.)  Once again, because a district court
"need not consider arguments raised for the first time in a reply brief," the court will disregard
28  this newly advanced argument. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

interpreting those rules." *Rubie's, LLC v. First Am. Title Co.*, No. 1:18-cv-01052-DAD-SKO, 2020 WL 7388093, at *5 (E.D. Cal. Dec. 16, 2020) (collecting cases).  To allege formation of a contract under California law, a plaintiff must allege that there was mutual consent, sufficiently definite terms so as to ascertain the parties' obligations, and good consideration. *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1142 (N.D. Cal. 2013).  For an oral agreement, a "[p]laintiff need not allege specific terms of the oral agreement and particular facts surrounding the formation of such agreement." *Glob. Plastic Sheeting v. Raven Indus.*, No. 17-cv-01670-DMS-KSC, 2018 WL 3078724, at *3 (S.D. Cal. Mar. 14, 2018) (finding that a plaintiff need only plead the legal effect of an oral contract by alleging the relevant substance of the contract).  However, allegations representing "mere legal conclusions that a contract existed . . . will be insufficient to survive a motion to dismiss." *Iglesia Cristiana Luz y Verdad v. Church Mut. Ins. Co.*, No. 15-cv-05621-RMW, 2016 WL 692839, at *4 (N.D. Cal. Feb. 19, 2016).

The court concludes that, upon amendment, plaintiff has sufficiently alleged the existence of a transactional relationship between himself and the moving defendants.  First, plaintiff alleges mutual assent.  "Mutual assent usually is manifested by an offer communicated to the offeree and an acceptance communicated to the offeror." *Donovan v. RRL Corp.*, 26 Cal.4th 261, 270–71 (2001).  "Mutual assent may be manifested by written or spoken words, or by conduct, and acceptance of contract terms may be implied through action or inaction." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (internal quotations and citations omitted); *see also* Cal. Civ. Code § 1565 ("The consent of the parties to a contract must be:  (1) free; (2) mutual; and (3) communicated by each to the other.").  Here, plaintiff has now alleged that an employee of defendant CCL had stated that if he paid off the Subject Property, defendant Wigginton would "ensure that [p]laintiff had access to the [Subject Property.]"  (Doc. No. 27 at ¶ 41.)  Plaintiff has also alleged that in May 2021, he accepted an offer and formed a contractual relationship with the moving defendants by paying off the balance due on the land purchase.  (*Id.* at ¶ 48.)  The offer as communicated contemplated the completion of plaintiff's performance as a means of accepting it, and therefore plaintiff did accept the offer by paying off the amount due for the land.  *See Roth Grading, Inc. v. Martin Bros. Constr.*, 493 F. Supp. 3d 865, 869 (E.D. Cal. 2020) (holding that an

offer was accepted when it stated it could be accepted by commencing performance and performance was started).  The court therefore finds that mutual assent has been sufficiently alleged in plaintiff's FAC.

The court further finds that the offer was sufficiently definite to form an enforceable contract.  "To be enforceable, a promise must be definite enough that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." *Ladas v. Cal. State Auto. Ass'n*, 19 Cal. App. 4th 761, 770 (1993).  "The California Supreme Court has cautioned, however, that the destruction of contracts on the basis of indefiniteness is disfavored and therefore, courts should, if feasible, 'construe agreements as to carry into effect the reasonable intentions of the parties if [they] can be ascertained.'" *Reiydelle v. J.P. Morgan Chase Bank, N.A.*, No. 12-cv-06543-JCS, 2014 WL 312348, at *11 (N.D. Cal. Jan. 28, 2014) (quoting *Patel v. Liebermensch*, 45 Cal.4th 344, 349 (2008)).  Plaintiff's allegation that defendant Wigginton would ensure that he had access to the Subject Property makes clear the legal effect of an acceptance of the offer:  that it created an obligation for defendants to provide plaintiff with access to the Subject Property.  (Doc. No. 27 at ¶ 41); *see Scolinos v. Kolts*, 37 Cal. App. 4th 635, 640 (1995) ("An oral contract may be pleaded generally as to its effect, because it is rarely possible to allege the exact words."); *see also McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1489 (2006) ("A written contract may be pleaded either by its terms . . . or by its legal effect.")  The court therefore finds that the terms of the offer as alleged were sufficiently definite to form a contract.

The court also finds that plaintiff has sufficiently alleged consideration in the form of an early pay-off of the amount due on the Subject Property.  "A contract requires consideration. Consideration consists of either a benefit to the promisor or a detriment to the promise.  A promise to do something the promisor is legally bound to do is not consideration." *San Luis Obispo Loc. Agency Formation Comm'n v. City of Pismo Beach*, 61 Cal. App. 5th 595, 600 (2021) (citations omitted).  Because plaintiff has alleged that he paid off the Subject Property sooner than required, he has sufficiently alleged that he provided good consideration to form a contract.  (Doc. No. 27 at ¶ 41, 162); *Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533, 552–53

1   (N.D. Cal. 2012) (finding that the plaintiffs agreeing to additional duties not required under the

2   original loan was a sufficient basis upon which to allege good consideration).  Therefore, the

3   court finds that plaintiff has sufficiently alleged the existence of a contract.

4         In conclusion, the court is unpersuaded by the moving defendants' argument that plaintiff

5   has still alleged no contractual privity, as his amendments sufficiently allege the existence of a

6   transactional relationship between himself and the moving defendants.  (Doc. No. 27 at ¶¶ 41, 48,

7   162.)  Plaintiff has also now alleged that the moving defendants actively concealed the fact that

8   the Subject Property was landlocked, that the deed did not contain easement rights to gain access

9   to the property, and that that active concealment was meant to induce him to accept their offer by

10  paying off the Subject Property early.  (*Id.* at ¶¶ 161–67); *see also LiMandri v. Judkins*, 52 Cal.

11  App. 4th 326, 336 (1997) (holding that nondisclosure can constitute actionable fraud when

12  defendant actively conceals a material fact when there is a duty to disclose it).  This is sufficient

13  to allege concealment under California law and to survive a motion to dismiss.

14  **D.   Unfair Competition Law**

15        The moving defendants also contend that plaintiff has not stated a claim under

16  California's Unfair Competition Law because they have not alleged a predicate violation of law

17  as required under the "unlawful" prong of that statute.  (Doc. No. 28-1 at 21.)  Under the

18  "unlawful" prong of the UCL, plaintiff must allege a predicate violation of law.  *See, e.g.,*

19  *Nacarino v. Chobani, LLC*, 668 F. Supp. 3d 881, 891 (N.D. Cal. 2022) ("[T]he unlawful prong of

20  the UCL 'borrows violations of other laws and treats [them] . . . as unlawful practices

21  independently actionable under section 17200 *et seq.* . . . .'") (citation omitted).  "'Generally,

22  violation of almost any law may serve as a basis for a UCL claim.'"  *In re Solara Med. Supplies,*

23  *LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1303 (S.D. Cal. 2020) (quoting

24  *Antman v. Uber Techs., Inc.*, No. 3:15-cv-01175-LB, 2015 WL 6123054, at *6 (N.D. Cal. Oct.

25  19, 2015)).  Plaintiff argues that he has properly alleged intentional misrepresentation and

26  concealment claims, which may serve as a basis for a UCL claim.  (Doc. No. 31 at 9); *see also*

27  *Draeger v. Transamerica Life Ins. Co.*, No. 2:19-cv-10478-CAS-GJS, 2020 WL 1332170, at *12

28  (C.D. Cal. Mar. 23, 2020) ("Here, the [c]ourt has already determined that [the] plaintiffs have

stated a claim for intentional misrepresentation pursuant to California law.  Accordingly, the

[c]ourt declines to dismiss plaintiffs' UCL claim, premised on the UCL's unlawful prong . . . .")

The court agrees.  Accordingly, the moving defendants' motion to dismiss plaintiff's UCL claims

will be denied.

**E.     Leave to Amend**

Leave to amend should be granted "freely" when justice so requires.  Fed. R. Civ.

P. 15(a).   A district court "should grant leave to amend even if no request to amend the pleading

was made, unless it determines that the pleading could not possibly be cured by the allegation of

other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th

Cir. 1990).

Here, the court is dismissing only plaintiff's RICO claim and plaintiff has explicitly stated

that he will not seek the opportunity to amend that claim.  Accordingly, further leave to amend in

this regard will be denied.

**CONCLUSION**

For the reasons stated above:

1.      The motion to dismiss brought on behalf of defendants Wigginton and Classic

Country Land LLC (Doc. No. 28) is granted in part, as follows:

a.      Plaintiff's RICO claim brought against defendants Wigginton and Classic

Country Land LLC, is dismissed without further leave to amend.

2.      The motion to dismiss brought on behalf of defendants Wigginton and Classic

Country Land LLC (Doc. No. 28) is denied in part as to the following claims:

a.      Plaintiff's intentional misrepresentation claim;

b.      Plaintiff's fraudulent concealment claim; and

c.      Plaintiff's Unfair Competition Law claim.

/////

/////

/////

/////

13

3.      Defendants Wigginton and Classic Country Land LLC shall file an answer responding to the claims asserted in plaintiff's first amended complaint no later than twenty-one (21) days after the date of entry of this order.

IT IS SO ORDERED.

Dated:   **November 15, 2024**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

14